THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* AIRLINE CANTEEN SERVICE, INC., *et al.*, Defendants and Counterplaintiffs-Appellants.—(THE CITY OF CHICAGO *et al.*, Counterdefendants; ELSONS OF ILLINOIS, Counterdefendant-Appellee.)

First District (2nd Division)   Nos. 77-1923, 78-686 cons.

Opinion filed September 12, 1978.—Rehearing denied October 11, 1978.

A. E. Botti and Douglas Drenk, both of Wheaton, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

In case number 77-1923, the defendants bring this interlocutory appeal from various orders of the circuit court dated December 20, 1977,

including those: granting a preliminary injunction to the City of Chicago, enjoining defendants, Airline Canteen Service, Inc. ("Airline Canteen" or "Canteen") and its president, Walter J. Henely, Jr., from destroying or removing any financial records from their offices at Chicago-O'Hare International Airport; denying defendants' motions for a change of venue; and denying defendants' motion to dissolve a temporary restraining order ("TRO") entered on November 29, 1977. Case number 78-686 is an interlocutory appeal from an order of the trial court on April 18, 1978, denying Airline Canteen's motion for a preliminary injunction to prohibit the City from carrying out threats to forcibly evict it from its leased premises at O'Hare.

In both appeals defendants contend that the trial court abused its discretion in issuing each of the orders appealed from.

The dispute between these parties arises out of a contract entered into between the City of Chicago and Airline Canteen on February 24, 1972. Under that agreement, the City agreed to "demise and lease" certain specified spaces within the three O'Hare Airport terminal buildings to Airline Canteen for the operation of a "newsstand" business for a period of 10 years, ending on February 23, 1982.

Canteen was authorized to sell newspapers, magazines, periodicals, and various other items. Canteen was required to supply "all leasehold improvements [outer enclosures, walls, doors, etc.] * * * within or defining the space* * *." Article VIII ("RENTAL") of the agreement, around which much of this dispute centers, provides in relevant part:

"A. MINIMUM AND PERCENTAGE TO BE PAID. During the term of this Agreement, Lessee agrees to pay Lessor a minimum rental of Seventy-Five Thousand (75,000.00) Dollars per year for each year of this Agreement or to pay a sum equal to the percentage of the gross receipts derived by Lessee as follows, whichever is greater:

(1) 15% on gift, toy, and jewelry items

(2) 12% on all other items.

B. SCHEDULE OF PAYMENTS. The Lessee shall pay each month in advance to the City Comptroller of the City of Chicago (hereinafter called 'City Comptroller') the sum equal to 1/12 of the minimum annual rental noted above.

Lessee, within fifteen (15) days of the end of each calendar month, shall pay to the City Comptroller a sum equal to the hereinabove described percentages of gross receipts for said calendar month less the amount prepaid as minimum rent for that month.

Annual adjustments for any rentals payable in excess of amount prepaid as required above shall be made within thirty (30) days after the close of each calendar year. Lessee shall submit within the

same time an audit of the gross receipts for that year, prepared by a Certified Public Accountant."

Article VIII of the agreement further required Airline Canteen to maintain true and accurate records at its offices at O'Hare:

"Such Books, ledgers, journals, accounts and records shall be available for inspection and examination by the Commissioner of Aviation and the Comptroller of the City of Chicago, or their duly authorized representatives, at reasonable times during business hours, and to make copies and excerpts therefrom as may be necessary to make a full, proper and complete audit of all business transacted by Concessionaire in connection with its operation hereunder. At the expiration of each year of the term of this Agreement, Concessionaire shall furnish to the City a Certified copy of a statement prepared by a Certified Public Accountant covering the newsstand business transacted by Concessionaire at the Airport and showing the gross revenue derived by Concessionaire from the operation of its business hereunder. Concessionaire shall, upon request, furnish such other and further financial or statistical reports as the City may, from time to time, require."

Article XXII of the agreement ("DEFAULT") provided for cancellation of the lease by the City upon certain conditions:

"These entire agreements are made upon this condition, that * * * if said Lessee shall fail or neglect to do or perform or observe any of the covenants contained herein on its part to be kept and performed and such failure or neglect shall continue for a period of not less than thirty (30) days after the Commissioner of Aviation has notified Lessee in writing of Lessee's default hereunder and Lessee has failed to correct such defaults within said thirty (30) days (such thirty day notification period shall not be construed to apply to any default in payment of rent) * * * then in * * * said cases or event, the Lessor, or the Commissioner of Aviation, lawfully may, at its option, immediately or any time thereafter, without demand or notice, enter into, and upon said leased premises or any part thereof and in the name of the whole, and repossess the same of its former estate, and expel said Lessee and those claiming by, through, or under it, and remove its effects, if any, forcibly if necessary, without being deemed guilty of trespass and without prejudice to any remedy which otherwise might be used, for * * * preceding breach of covenant. On the reentry aforesaid, this lease shall terminate."

In a letter dated November 5, 1977, the City notified Airline Canteen of an alleged violation of the agreement. In that letter, the City informed

Airline Canteen that it had failed to supply a "certified copy of a statement prepared by a Certified Public Accountant concerning the newsstand business" for all years but 1974 and 1976. Even with respect to those years, the City maintained that Canteen was in violation of the agreement because the statements submitted were not certified. The letter stated:

"Because of the above failures and recent questions that have arisen in relation to the newsstand operation, the City of Chicago has determined that the interests of the City will be best served by requesting new proposals for the right to operate the newspaper concession at Chicago O'Hare International Airport and terminating your present contract.

This letter constitutes official notification of the City of Chicago's termination of your newspaper concession contract. You will have thirty (30) days from receipt of this letter to vacate, quit, and deliver the demised premises under the lease to the City of Chicago."

On November 29, 1977, the City filed a complaint for an accounting and other equitable relief alleging that Canteen had under-reported the gross amount of its sales in the International Terminal building, and had routinely and fraudulently deposited a portion of the gross cash receipts from the International Terminal in a bank account different from that in which it deposited the remainder. It accused defendant Henely of knowledge of the fraud and of failure to prevent it. The complaint prayed for an accounting of all unpaid rental fees due under the agreement and for other equitable relief.

Although the record on appeal does not reflect a copy of the order, the parties are in agreement that on November 29, 1977, a temporary restraining order was granted in favor of the City by Judge Donald O'Brien, enjoining defendants from removing or destroying any of its financial records from its O'Hare Airport offices. Defendants moved to dissolve the temporary restraining order on December 2, 1977. Defendants also filed a counterclaim for an injunction. Thereafter, on motion of one or both of the defendants, the case was transferred to Judge Nathan M. Cohen.

On December 9, 1977, the date on which the TRO was to have expired, the City filed its first amended complaint and a motion for a preliminary injunction seeking the same relief as that afforded by the TRO. The TRO was extended for an additional 10-day period to December 19, 1977.

· The City's verified petition for a preliminary injunction pursuant to section 3—1 of the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, par. 3—1) was based upon count III of its verified first amended complaint, which was expressly incorporated therein by reference. Count III of the first

amended complaint included allegations that monitoring of the Canteen cash registers in the International Terminal by the City's auditors revealed that Canteen's gross cash receipts for the first 15 days of November 1977, exceeded the amount reported by Canteen for the entire month of November in 1976; that Canteen had routinely deposited its cash receipts from the International Terminal from the first to the 15th of the month in a bank account different from that in which it deposited the remainder of such funds; that Canteen had failed to report to the City as required by the contract, some portion of its gross cash receipts; that the gross retail value (excluding sales tax) of the merchandise sold by Canteen in fiscal year June 1, 1976, through May 31, 1977, was approximately $3.6 million, whereas the amount of sales actually reported by Canteen was only $2.9 million; that based on the records currently available, the City's auditors were unable to determine the amount of rental fees due and owing to the City under its contract with Canteen; that the City's auditors had requested the production of certain documents necessary to conduct a review; that on November 10, 1977, an automobile said to contain those records was reported stolen; that on November 28, 1977, the automobile was recovered, but that the records were not; that due to the circumstances surrounding the theft of the car, the City had reason to believe that other records relevant to the audit would also become unavailable; that without the missing records, and access to remaining records, the accounting review would be substantially impeded, resulting in irreparable harm to the City. The City's motion prayed that the defendants, their agents, and employees be enjoined from destroying or removing from its offices at O'Hare any business records of Canteen compiled during the ordinary course of its business; that access to the records be limited to duly authorized officials or employees of Canteen and representatives of the City; and that the City be given immediate access to said records.

On December 16, 1977, defendants filed separate motions to strike and dismiss the City's first amended complaint and motion for preliminary injunction. At a hearing on December 19, 1977, defendant Henely moved for a change of venue generally alleging the prejudice of Judge Cohen. After the court denied this motion, it denied a similar motion by Canteen which alleged specifically the prejudice of Judge Cohen. The court then proceeded to hear argument on the various pending motions.

On December 20, 1977, the court entered orders: denying defendants' motion to dissolve the TRO, striking count II of the City's first amended complaint (allowing the City until January 3, 1978, to file a second amended complaint), denying defendants' motion to strike and dismiss the City's motion for preliminary injunction, and granting the City's motion for preliminary injunction.

Defendants' notice of interlocutory appeal pursuant to Supreme Court Rule 307 (Ill. Rev. Stat. 1977, ch. 110A, par. 307) was filed that same day. On January 3, 1978, the City filed its second amended complaint. Defendants answered, denying the material allegations of the second amended complaint on January 23, 1978.

On April 14, 1978, defendants filed a motion for a preliminary injunction, seeking an injunction against the City, Mayor Michael Bilandic, Commissioner Dunne, and Purchasing Agent Arnold from taking any action to close down, hinder, or obstruct its business operations at O'Hare. The motion also sought an injunction against Elsons of Illinois, whose bid to replace Canteen at O'Hare had been accepted by the City, to enjoin them from interfering with the contractual relationship between defendants and the City.

Airline Canteen's motion for preliminary injunction alleged that at all relevant times, it had fully complied with each of the terms of the agreement; that on or about November 5, 1977, defendant Bilandic directed counsel for the City to write a letter notifying Canteen of an alleged breach of the agreement. Canteen alleged that this termination of the agreement was improper and in itself a violation of the agreement, because the mayor was not the proper party to take such action, because the agreement provided Canteen a 30-day period in which to remedy any default, and because the reference to "recent questions that have arisen in relation to the newsstand operation" was vague and did not properly notify it of the alleged defaults.

Airline Canteen alleged that prior to December 5, 1977, it submitted to the Comptroller, and the Comptroller admitted receiving, "certified copies of audits of CONCESSIONAIRE gross receipts and revenue for the years 1972, 1973, 1974, 1975, and 1976, prepared by a Certified Public Accountant." The motion alleged that copies of these audits were attached to the motion. However, the record reflects only two copies of a statement referring only to Terminal II at O'Hare. The statement appears below the letterhead of a certified public accountant, but does not bear his signature. A heading immediately above the data states: "UN-AUDITED." Below the data is a statement that: "The recap statement presented here is not audited by me and accordingly I do not express an Opinion." Below that is contained the following statement:

"I hereby certify that this is a true and correct copy of a statement of gross receipts prepared by Lawrence Jugin, Certified Public Accountant.

Dated: December 5, 1977
By: Stelios Andre Andos /s/
Assistant Secretary
General Manager
Airline Canteen Service, Inc."

The motion further alleged that on or about April 6, 1978, the City had accepted a bid from defendant Elsons to replace Airline Canteen prior to the expiration of the Canteen lease; that Elsons, its officers and agents, had knowledge of the duration of Canteen's contract, and had "conspired" with the City to replace it as concessionaire prior to the expiration of the contract.

It was alleged that at 12 p.m. on April 14, 1978, the City had advised Canteen that it would remove Canteen's property from the O'Hare terminals on April 15, prevent Canteen's employees from entering upon the premises and operating the business, and that unless the City was restrained from interfering with the conduct of its business at O'Hare, Canteen would be immediately and irreparably harmed in the following respects: Undeterminable loss of earnings from sales during the remaining term of the agreement; its inventory, valued at $222,013.54, would become unsaleable; loss of the service, experience, and loyalty of its employees; denial of its legal right to the premises by the illegal acts of the City; and loss of goodwill among the business community, Canteen patrons, and the public. The cumulative effect of this damage, it was alleged, would be that Canteen would be precluded from conducting a similar business elsewhere. It was alleged that an injunction would cause no injury to the public and would preserve the *status quo*. The motion prayed that the City be preliminarily and permanently enjoined from: preventing or interfering with Canteen's employees, servants, agents, suppliers, or patrons from entering the premises; removing any goods or merchandise therefrom; interfering with Canteen's conduct of business and storing of goods; from accepting, approving, or executing a contract with Elsons or another to replace Canteen. Canteen prayed for preliminary and permanent injunctions against similar conduct by Elsons.

The City filed no answer to defendants' motion. However, after a hearing on April 17 and 18, 1978, at which the City and Elsons presented no evidence, the trial court denied the motion. The court's order contained findings that the defendants did not comply with the lease by their failure to furnish audited statements of gross receipts as required by the terms of the lease, and that the City could re-enter and recover possession of the premises without further legal process pursuant to the terms of the lease. The order also contained a finding that such a lease provision is not contrary to Illinois law or public policy. The order permitted the City to re-enter and take possession of the premises immediately on the condition that the transition from Airline Canteen to Elsons be accomplished with as little inconvenience to the traveling public as possible, established a specific timetable, and set conditions for the eviction of Canteen and the installation of Elsons as concessionaire. The order also denied Canteen's motion to stay the City's entry pending an emergency motion before this court. This latter motion related

Canteen's intentions to file an emergency interlocutory appeal. Airline Canteen was evicted on April 18, 1978, and Elsons was installed as concessionaire at O'Hare. Canteen's notice of interlocutory appeal was filed on April 18, 1978, and docketed in this court as number 78-686.

On April 20, 1978, this court entered an emergency order which in large part reversed the trial court, and ordered it to restore the parties to the *status quo* existing prior to the April 18, 1978, order. On that same day, the trial court entered an order that Airline Canteen be restored to its business at O'Hare on April 24, 1978. The City and Elsons then filed a petition for leave to appeal to the Illinois Supreme Court. On April 24, 1978, that court, per Mr. Justice Clark, entered an order staying the orders of this court and of the circuit court entered pursuant thereto. On May 9, 1978, the full supreme court dissolved the stay order and entered another stay order "until the issuance of the mandate of the Appellate Court upon that Court's disposition of the merits of the appeal of Airline Canteen Service, Inc., from the order of the Circuit Court of Cook County (cause No. 77-CH-8158), dated April 18, 1978." Both appeals, number 77-1923 and number 78-686, have been consolidated in this court for argument and opinion.

### A. 77-1923

### I.

Canteen contends the trial court abused its discretion in granting the City a preliminary injunction enjoining Canteen from removing from its offices at O'Hare or destroying any of its business records, and in ordering representatives of the City be given access to such records. It is argued that the City's pleadings and the testimony at the hearing on the City's motion for a preliminary injunction failed to establish the threat of irreparable injury; the need for extraordinary relief; the lack of an adequate remedy at law; the lack of any impending or threatened injury; the need to preserve the *status quo;* or the probability of success on the merits of the City's accounting action. It is also vaguely argued that if the injunction is affirmed by this court, all forms of statutory discovery as they now exist in Illinois will be "severely hinder[ed] and render[ed] useless." Finally, Canteen argues that by granting the preliminary injunction, the trial court effectively decided the merits of the City's complaint and awarded the requested relief of an equitable accounting.

We fail to see how Canteen was in any way prejudiced by the entry of the injunction order. There is no dispute that article VIII of the agreement between the parties requires that Canteen's financial records be maintained at its O'Hare Airport office, and be made available for inspection, examination, and copying by the Commissioner of Aviation,

the Comptroller of the City of Chicago, or their duly authorized representatives at reasonable times during business hours to allow them to conduct "a full, proper and complete audit" of Canteen's business operations under the lease.

There is also no dispute between the parties that shortly after the City's auditors requested the production of certain of Canteen's business records, a car purportedly containing those records was stolen from the possession of Canteen's general manager. It is undisputed that when the car was recovered the records, of doubtful value to anyone other than the parties to this case, were not contained therein and have not been recovered. Furthermore, Canteen has acknowledged, before the trial court, in its briefs, and in oral argument before this court, that the records sought are properly discoverable.

Discovery procedures in Illinois are governed by Supreme Court rule. (Ill. Rev. Stat. 1977, ch. 110, pars. 58, 2.) The discovery of documents, objects, and tangible things is governed by Supreme Court Rule 214 (Ill. Rev. Stat. 1977, ch. 110A, par. 214) which provides, in relevant part:

> "Any party may by written request direct any other party to produce for inspection, copying, reproduction, photographing, testing or sampling specified documents, objects or tangible things, * * * whenever the nature, contents, or condition of such documents [etc.] is relevant to the subject matter of the action. The request shall specify a reasonable time, which shall not be less than 28 days except by agreement *or by order of court,* * * *."
> (Emphasis added.)

The instant case rests upon the City's complaint for an equitable accounting of the rents due and owing from Canteen under the agreement. As Canteen has conceded, the records which are the subject of the City's motion for a preliminary injunction are relevant to the subject matter of the complaint, and are, therefore, discoverable.

■■ Rule 201(c)(1) (Ill. Rev. Stat. 1977, ch. 110A, par. 201(c)(1)) permits the court, on its own initiative, or on motion of either party, to enter a protective order "as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." The conceded disappearance of relevant records from the possession of Airline Canteen may be charitably characterized as fortuitous and mysterious. There can be no question that the disappearance of additional records, whether or not the substance thereof may be reconstructed from other sources, would "disadvantage," if not irreparably harm, the City's case, and would subject them to additional expense. Under these circumstances, we are of the opinion that the trial court would have been within its discretion to grant the relief sought by the City's motion for a preliminary injunction

under the Supreme Court rules relating to discovery—an order protective of the remaining documents and granting immediate access thereto to the City. By proceeding under the law relating to injunctions, the City assumed additional and unnecessary burdens in obtaining the desired relief. However, the end result, whether or not the relief actually awarded complies with the law relating to injunctions, is precisely the same, and conforms exactly to the obligations assumed by Canteen in the agreement. Canteen's contentions that this has the effect of hindering and rendering useless the rules for discovery and that, by granting the prayed-for relief, the trial court effectively decided the merits of the case and awarded an equitable accounting to the City are totally without merit and deemed frivolous. The order of the trial court of December 20, 1977, insofar as it is consistent with this opinion, is hereby affirmed.

## II.

■■ Defendants Henely and Airline Canteen contend the trial court abused its discretion in denying their successive motions for a change of venue on December 20, 1977. Supreme Court Rule 307(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 307(a)), under which this appeal is brought, provides for appeals from certain specified interlocutory orders granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction. Only final judgments or orders are appealable unless the particular judgment or order comes within one of the specified exceptions set forth by the rule. The denial of a motion for a change of venue is not a final order, nor does any Supreme Court rule authorize an appeal from an interlocutory order of such nature. (*Mexicali Club, Inc. v. Illinois Liquor Control Com.* (1st Dist. 1976), 37 Ill. App. 3d 797, 799, 347 N.E.2d 190; *Stark v. Roussey & Associates, Inc.* (1st Dist. 1970), 131 Ill. App. 2d 379, 382, 266 N.E.2d 439; *In Re Estate of Querciagrossa* (3d Dist. 1965), 65 Ill. App. 2d 280, 283-84, 213 N.E.2d 13.) In *Mexicali*, an appeal purportedly brought under Rule 307, we refused to consider the appellant's arguments based on the trial court's refusal to grant a change of venue. An appeal under Rule 307 does not open the door to a general review of all orders entered by the trial court up to that date. Interlocutory appeals are piecemeal in nature and Rule 307 provides for some very specific exceptions to the rules against piecemeal appeals.

■■■ In their reply brief, defendants suggest that the court may consider the issues relating to venue under Supreme Court Rule 366 (Ill. Rev. Stat. 1977, ch. 110A, par. 366) which provides:

"(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just:
* * *

(5) give any judgment and make any order that ought to have been

given or made, and make any other and further orders ° ° ° that the case may require." (Ill. Rev. Stat. 1977, ch. 110A, par. 366(a)(5).)

This portion of the rule, however, merely enumerates the various dispositions which may be made of a case, and predisposes that the issues are properly before the court. Defendants cite *Security Savings & Loan Association v. Griffin* (4th Dist. 1978), 56 Ill. App. 3d 903, 372 N.E.2d 1118, 1124, *People v. Torres* (1st Dist. 1977), 47 Ill. App. 3d 101, 361 N.E.2d 803, 807, and *Village of Arlington Heights v. National Bank* (1st Dist. 1977), 53 Ill. App. 3d 917, 369 N.E.2d 502, 504-05, in support of their position. None of these cases involved an interlocutory appeal under Rule 307. *Torres* has no application whatsoever to either the law or the facts of the instant case. Our own research has failed to disclose any cases which hold that an appellate court may expand the scope of its review under Rule 307 to questions of venue. The only issue before the reviewing court on an interlocutory appeal from an order of the trial court granting a preliminary injunction is to determine from the record whether there was a legal basis to sustain the granting of the injunction. (*Summit Electric Co. v. Mayrent* (1st Dist. 1974), 17 Ill. App. 3d 545, 550, 308 N.E.2d 313.) Accordingly, defendants' appeal from the orders of the trial court denying their motions for a change of venue is dismissed without prejudice to again raise the issue in a future appeal from a final order of the trial court.

In the course of preparing this opinion, we have reviewed defendants' contentions with respect to the issue of venue. And, while we do not state an opinion on the merits thereof, we think that in the interests of justice and the expeditious conclusion of this dispute, the trial court should consider transferring venue of this case to another judge in order to obviate venue as an issue in a subsequent appeal. Obviously, the foregoing is a gratuitous observation and is not to be considered as a binding order of this court.

### III.

On November 29, 1977, the same day on which it filed its original complaint for an accounting, the City filed a motion for a temporary restraining order, praying that defendants be temporarily restrained from destroying or removing from their offices those books and records relevant to the accounting action, that defendants produce such books and records for an examination and review by the City's agents, and for other equitable relief. The TRO was granted by Judge O'Brien that same day, but a copy of the order appears nowhere in the record on appeal. Apparently, no verbatim transcript of the proceedings before Judge O'Brien was made, nor have defendants, the appellants here, prepared a

bystanders report of proceedings for inclusion in the record on appeal. It appears that an attorney did appear on behalf of defendants, but the record does not clearly reflect what role, if any, that attorney played in the proceedings which culminated in the issuance of the TRO. On December 2, 1977, defendants filed a motion to dissolve the TRO, raising numerous objections to the sufficiency of both the City's motion and the court's order.

The parties appeared before Judge Cohen on December 9, 1977. On that date, the TRO was extended for an additional 10-day period. The parties next appeared before Judge Cohen on December 19, 1977, the day the TRO was set to expire. On that date, the following colloquy took place between the court and counsel for the defendants:

"THE COURT: * * * you should have brought a hearing on your motion to dissolve prior to the end of the ten days.

MR. BOTTI: I did, Judge. You continued it until today.

THE COURT: I continued your motion?

MR. BOTTI: Yes, sir.

THE COURT: Well, I didn't understand that you were ready to go ahead within the week. If you had made that clear, I would have attempted to accommodate you. Now, since the period is expiring at the end of the day, the motion is rendered moot, or if it's to be heard, it will be heard together with the City's motion for a preliminary injunction.

MR. BOTTI: That's the ruling?

THE COURT: And, that's the court's ruling."

The following day, the court entered the order (prepared by counsel for the defendants) which denied defendants' motion to dissolve the TRO. The court also granted the City's motion for a preliminary injunction which provided essentially the same relief as that previously afforded by the TRO. (See part A-I of this opinion.) Defendants now contend that the trial court committed an abuse of discretion in denying the motion to dissolve the TRO without a hearing. The City contends that any issue with respect to the TRO is moot because the identical issues are raised by defendants' appeal from the preliminary injunction order of December 19, 1977, and because the TRO expired on that same date.

■■ A moot case is one which seeks to determine an abstract question, which does not rest upon existing facts or rights, or which seeks a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any cause, cannot have any practical legal effect upon a then existing controversy. The obvious corollary to these principles is that if a

substantial issue or question remains in the case, the cause is not moot. *In re Creger* (2d Dist. 1944), 323 Ill. App. 594, 600, 56 N.E.2d 649.

■■■ A temporary restraining order under section 3—1 of the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, par. 3—1) is an emergency remedy of extremely brief duration which may issue only in exceptional circumstances and only until the trial court can hear arguments or evidence, as the circumstances require, on the subject matter of the controversy and otherwise determine what relief, if any, is appropriate. (*Paddington Corp. v. Foremost Sales Promotions, Inc.* (1st Dist. 1973), 13 Ill. App. 3d 170, 174, 300 N.E.2d 484.) As a practical matter, the brief duration of a temporary restraining order precludes appellate review prior to the expiration of the order. (See *Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 184, 303 N.E.2d 1.) In the typical case, therefore, an appellate court is powerless to grant the appellant any effective relief. Nevertheless, in the *Bohn Aluminum* case, the Illinois Supreme Court held, two justices dissenting, that a temporary restraining order is properly the subject of an interlocutory appeal under Supreme Court Rule 307. (Ill. Rev. Stat. 1977, ch. 110A, par. 307.) The rationale for this conclusion was stated as follows:

"During the time when it remains in effect a restraining order could work substantial injury upon the defendant, injuries for which he should be entitled to recover damages if the order was wrongfully issued.

However, this court has held, in the case of preliminary injunctions, that no damages may be recovered by the defendant if the injunction has not been dissolved, since the refusal of the trial court to grant a motion to dissolve amounts to an adjudication that the injunction was not wrongfully issued, regardless of whether a permanent injunction is ultimately granted or denied. [Citations.] To hold that the refusal to dissolve a temporary restraining order is not appealable under Rule 307 would similarly preclude the defendant from applying for an award of damages." (55 Ill. 2d 177, 184-85.)

Apparently, the record before the appellate and supreme courts in *Bohn Aluminum* affirmatively demonstrated that the defendant would suffer arguably compensible damages in the event the TRO was wrongfully issued. (See *Bohn Aluminum & Brass Co. v. Barker* (4th Dist. 1972), 3 Ill. App. 3d 600, 605, 278 N.E.2d 247 (dissent of Craven, J.).) In the case at bar, as we have noted, the defendants have failed to suggest even the remote possibility of damages flowing from the grant of the TRO, nor does the record indicate the possibility of any damages. In this context, we believe that this case is distinguishable from *Bohn Aluminum*, that the

issue presented is abstract, and that a reversal by this court would have no practical effect on the controversy. Any issues raised, therefore, by the trial court's refusal to dissolve the TRO have been rendered moot by the expiration of the order.[1]

## B. 78-686

As we have noted, appeal number 78-686 is brought from the trial court's order of April 18, 1978, which denied Airline Canteen's motion for a preliminary injunction against the City and Elsons to prevent them from entering and forcibly evicting Canteen from its concession areas at O'Hare. In essence, the dispute between these parties is very simple: The contract between the City and Airline Canteen provides that upon the latter's default and upon 30 days' notice, during which period Canteen is permitted to cure any default, the City may re-enter and repossess the premises without court order and with the use of force, if necessary. Canteen contends that on December 5, 1977, it cured the defaults alleged in the City's letter of November 5, 1977, by filing with the City certified copies of a statement of gross receipts for the years 1972 through 1976 prepared by a certified public accountant. The City maintains that the contract requires the submission of certified *audits* of gross receipts, and not an unaudited statement prepared by a certified public accountant and "certified" by an officer of Airline Canteen.

By its motion for preliminary injunction, Airline Canteen seeks the intervention of equity in a contract dispute. The City maintains that Canteen is not entitled to equitable relief because the remedy at law, should the City be determined to have wrongfully breached the agreement, is fully adequate.

It is well established that a hearing on a motion for a preliminary injunction does not determine any factual issue. A preliminary injunction is issued to preserve the *status quo* until the trial court may consider the merits of the case. In ruling on a motion for such relief, controverted facts or the merits of the case *are not decided.* In reviewing the discretion exercised by the trial court, an appellate court may decide only whether the petitioner has demonstrated a *prima facie* case that there is a fair question as to the existence of the rights claimed; that the circumstances lead to a reasonable belief that they probably will be entitled to the relief sought, if the evidence sustains the allegations of the petition; and that matters should be kept in *status quo* until the case can be decided on its

---

[1] In *Bettendorf-Stanford Bakery Equipment Co. v. UAW Local 1906* (5th Dist. 1977), 49 Ill. App. 3d 20, 363 N.E.2d 867, the fifth district of this court refused to dismiss an interlocutory appeal from the denial of a motion to dissolve a TRO on grounds that the defendants had failed to make a claim for damages in their motion to dissolve. (49 Ill. App. 3d 20, 23.) Our decision here is entirely consistent with *Bettendorf*: we do not suggest that a motion to dissolve a TRO must include a claim for damages. We require only that the record on appeal demonstrate the possibility of a claim for damages.

merits. In sum, the only question before us is whether there was a sufficient showing to sustain the order of the trial court. See *Schwalm Electronics, Inc. v. Electrical Products Corp.* (1st Dist. 1973), 14 Ill. App. 3d 348, 352, 302 N.E.2d 394.

■■ ■ We think that Airline Canteen's pleadings and the evidence it produced at the hearing on April 17-18, more than satisfied the requirements for a preliminary injunction, and that the trial court abused its discretion in denying the relief sought. Furthermore, by granting affirmative injunctive relief to the City, when such relief was not requested in any pleading filed by the City and when counsel for the City expressly disclaimed the desire for any such relief, the trial court decided ultimate factual issues in the case, and far exceeded the bounds of its discretion.

In the trial court, and in this court, Airline Canteen contended that it cured the alleged defaults outlined in the City's letter of November 5, 1977, on December 5, 1977. The City responded that the statements filed by Canteen did not comply with the provisions of the contract. The trial court's order states, in part:

> "* * * Airline Canteen Service, Inc. did not comply with the lease, inter alia that it failed to furnish audited statements of gross receipts as required under the lease* * *."

Airline Canteen argued that the lease provision which permits, upon default, re-entry and repossession without legal process or court order is void and unenforceable under the public policy of the State of Illinois, citing *Brooks v. LaSalle National Bank* (1st Dist. 1973), 11 Ill. App. 3d 791, 298 N.E. 262. The City argued that a lessee may waive the protection of the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1977, ch. 57) by an express provision in a lease, citing *Cox v. Eckstrom* (2d Dist. 1908), 142 Ill. App. 426, *Ambrose v. Root* (1850), 11 Ill. 497, *Page v. Du Puy* (1866), 40 Ill. 506, *Fabri v. Bryan* (1875), 80 Ill. 182, and *Sherman House Hotel Co. v. Cirkle* (1st Dist. 1907), 136 Ill. App. 381. The *Brooks* case contained the most recent expression of the current policy in Illinois:

> "The latest Illinois case upholding the validity of a provision in a lease giving to the landlord the right on certain contingencies to re-enter without process or by such force as is necessary dates back to 1907. [Citation.] We believe the more modern enlightened view appears in *Jordan v. Talbot* (1961), 55 Cal.2d 597, 12 Cal.Rptr. 488, 361 P.2d 20. With Justice Traynor speaking for the majority of the court, the court held that a provision in a lease expressly permitting a forcible entry would be void as contrary to the public policy of the California forcible entry and detainer statutes. The court went on to say: 'Regardless of who has the right to possession, orderly procedure and preservation of the peace require that the actual possession shall not be disturbed except by legal process.' (55 Cal.

2d 597, at 605, 12 Cal.Rptr. 488, at 492, 361 P.2d 20, at 24.) Without deciding the issue on the merits, we feel that *Jordan v. Talbot* expresses the modern trend on the subject,* * *." (11 Ill. App. 3d 791, 797.)[2]

On this issue, the order of the trial court states:

> "[T]he lease provides that upon a breach the lessor may re-enter and recover possession of the premises without further legal process. The court finds that such provision of reentry [*sic*] is not contrary to Illinois law or public policy."

It is clearly not the function of this court at this stage of the proceedings—an interlocutory appeal from a proceeding in which the City, as respondent, filed no responsive pleadings and presented no evidence—to decide such an important legal issue. Our function is merely to ascertain whether Airline Canteen made a *prima facie* showing that it was entitled to the relief sought. We believe that the age of the cases cited by the City and the expression of a contrary view in the *Brooks* case indicate that there is a fair question as to Canteen's right to enjoin an allegedly illegal eviction and a probability that it may succeed on the merits.

■■ The City contends, for the first time in this court, that its agreement with Airline Canteen is not a lease, but a licensing agreement terminable at the will of the licensor, and that thus the provisions of the Forcible Entry and Detainer Act are inapplicable. This issue was never raised by the City in the court below. Up to this point, the record indicates that the parties referred to the agreement as a lease. This conclusion is supported by the agreement itself which purports to "demise" the premises to Canteen, contains legal descriptions and plats of those areas, and uses the terms "lessor," "lessee," and "estate" throughout. In support of its contentions, the City cites a number of cases, including *Holladay v. Chicago Arc Light & Power Co.* (1st Dist. 1894), 55 Ill. App. 463, *South Center Department Store, Inc. v. South Parkway Building Corp.* (1st Dist. 1958), 19 Ill. App. 2d 61, 153 N.E.2d 241, and *Bentley v. Palmer House Co.* (7th Cir. 1964), 332 F.2d 107. The distinction raised by these cases is that a "license" does not convey an interest in land. The City maintains that it was not the intention of the parties to this agreement to convey an interest in real property, citing to a provision of the agreement which would permit the Commissioner of Aviation to move the concession areas to other, comparable locations within the airport terminal buildings. In view of the other language of the lease to which we have alluded, this point is far from dispositive of the issue of the intent of the parties. Such an issue is best resolved in a full hearing on the merits of the case.

As a last resort, the City argues that the order of the trial court, which

---

[2] It is to be noted that both the *Brooks* and *Jordan v. Talbot* cases involved residential apartment leases.

established an orderly transition from Airline Canteen to Elsons, was the equivalent of the order it would have obtained in a proceeding under the Forcible Entry and Detainer Act. We disagree. Under the Forcible Entry and Detainer Act, the burden of proof rests on the party asserting its right to possession. (19 Ill. L. & Prac. *Forcible Entry and Detainer* §9, at 526 (1956).) Under the circumstances of this case, it was necessary that Airline Canteen sue for an injunction to prevent its forcible eviction. Under the Forcible Entry and Detainer Act, the foremost issue to be determined would be the City's right to possession. (See *Bielzoff Products Co. v. Beam Distilling Co.* (1st Dist. 1954), 3 Ill. App. 2d 530, 533, 123 N.E.2d 135; *Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 359, 280 N.E.2d 208; and *Peoria Housing Authority v. Sanders* (1973), 54 Ill. 2d 478, 298 N.E.2d 173.) By requiring Airline Canteen to seek an injunction, many other issues are raised, principally those concerning its right to equitable relief, which cloud the main issue and prevent an expeditious determination of the right to possession. The procedure employed here is clearly not that contemplated by either the Injunction Act or the Forcible Entry and Detainer Act. The report of proceedings in this case is a vivid example of the cumbersome nature of this mode of procedure.

If, as Airline Canteen contends, that portion of the contract which allows the City to forcibly re-enter the premises without notice or judicial process, is contrary to public policy and therefore unenforceable and void, then Canteen was faced with an unlawful eviction. Under these circumstances, it was highly desirable that the *status quo* be preserved until a final determination of the case on its merits. The trial court should have granted the injunction.

## Conclusion

For the reasons stated, cause number 77-1923 is affirmed. Cause number 78-686 is reversed and remanded for a full hearing on the merits of the City's accounting action. We do not, however, order that Airline Canteen be reinstated in its concession business at O'Hare. In reaching this latter conclusion, we are guided by our supreme court's mandate of May 8, 1978, permitting Elsons to remain in possession and staying the effect of our previous order which would have restored the *status quo*. After a final decision on the merits of the City's accounting action, the trial court shall enter an appropriate order.

Cause No. 77-1923 affirmed.

Cause No. 78-686 reversed and remanded.

STAMOS, P. J., and BROWN, J., concur.