Samuel Mahaffey et al., Defendants in Error, v. Wisconsin Central Railway Company, Plaintiff in Error.

## Gen. No. 14,296.

1. CONTRACT—*by what law governed.* *Held,* that the contract in question in this case was an Illinois and not a Wisconsin contract.

2. CONTRACT—*effect of change by mutual consent.* An agreement when changed by the mutual consent of the parties becomes a new contract.

3. COMMON CARRIERS—*extent of obligation of.* A common carrier by the law of Illinois is an insurer of goods entrusted to it and accountable for the loss thereof, or any damage thereto, unless shown to have happened by the act of God or the public enemy or to have been occasioned by an act of the shipper or someone in his employ; the burden of proving exoneration is upon the carrier. This rule of liability, however, may be subject to the exception of non-applicability to live stock and perishable goods; the existence of this exception, however, is not determined by the court in this case.

4. COMMON CARRIERS—*liability of initial carrier for acts of connecting carriers.* The initial carrier is liable for the acts of all succeeding carriers for the entire route.

5. APPEALS AND ERRORS—*effect given to statement of facts by Municipal Court.* The Appellate Court in considering a statement of facts made by the Municipal Court for purposes of review presumes that the facts stated are material and will give effect to such facts accordingly.

*Assumpsit.* Error to the Municipal Court of Chicago; the Hon. FRANK CROWE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed February 16, 1909.

**Statement by the Court.** On December 4, 1907, the defendants in error, plaintiffs below, doing business as The Mahaffey Company, recovered a judgment in the Municipal Court, for $217 and costs, against the Wisconsin Central Railway Company, plaintiff in error. The Railway Company has sued out this writ of error to reverse that judgment.

The Mahaffey Company, on October 10, 1906, shipped from Custer, Wisconsin, a carload of 200 sacks of potatoes, by the plaintiff in error as a common carrier. Each sack contained two and one-half bushels, making 500 bushels in all. These potatoes were frozen, damaged and lost to The Mahaffey Company. The judgment is for the value of these potatoes less a charge of $153 for freight.

The Mahaffey Company shipped the potatoes in an Illinois Central Railroad Company's car, on the defendant's road at Custer, and received from the defendant a shipping receipt or bill of lading acknowledging the receipt of the potatoes. Under the heading of "Consignee, Destination and Routes," upon the bill of lading, is shown the following: "The Mahaffey Co., Chicago, Ill. Allow Inspection. Hold at Kolze for instructions." Kolze is a switching station eighteen miles out of Chicago where incoming freight trains are broken up and cars are sidetracked or switched to other roads, according to directions. On October 12, 1906, the plaintiffs gave to the Wisconsin Central at its Chicago station an order or instruction with reference to the car in question, evidently partly in print and partly written. The material part of that order or instruction is as follows:

"Change consignee and destination, Hattiesburg, Miss.—To read order The Mahaffey Co.—Notify Pullen Prod. Co.—Route via I. C. & Q. & C., Protect through rate of ............... Charges: Follow, Guaranteed—Allow Inspection.

Yours truly,
THE MAHAFFEY Co.
Per Math."

It appears The Mahaffey Co. had made an executory contract of sale of the potatoes to the Pullen Produce Company of Hattiesburg, Miss., for 74 cents per bushel, but The Mahaffey Company retained the control of the potatoes. The letters for the route, in the instruction,

mean: "I. C." Illinois Central Railroad and "Q. & C." Queen & Crescent Railroad.

When the instruction was given to the Wisconsin Central, at Chicago, Illinois, the car of potatoes was at Kolze and the agent of that road wrote across the bill of lading, which had been handed to him, as follows:

"R. Order No. 5868. This Bill of Lading changed at Chicago, 10-12-06, to read as follows: Order The Mahaffey Co. Hattiesburg, Miss., via I. C. & Q. & C. Notify Pullen Produce Co.

F. Brandecker, Agt. W. C. Ry. Co.

Noonan.

Allow Inspection.             Charges Guaranteed."

The Illinois Central receipted to the Wisconsin Central for the car of potatoes in good order at Chicago, on October 16, 1906. The Illinois Central afterwards delivered the car to the Gulf & Ship Island Railroad, at Jackson, Miss., on October 20, 1906, and on the following day it reached Hattiesburg over the latter road; but that day was a Sunday and the agent of that road there did not notify the Pullen Produce Company until October 22nd, the day after. J. D. Pullen, manager of the Pullen Produce Company, then inspected the potatoes, while the car was in possession of the G. & S. I. R. R., and rejected them. The potatoes were then in a frozen and damaged condition— principally on top and around the edges. On October 24, 1906, the agent of the G. & S. I. R. R. Co. at Hattiesburg, without any notice to any one so far as the record shows, sold the potaoes for $150 to pay the freight charges thereupon, amounting to $158.40. In the statement of facts it is stated that 74 cents per bushel was the value of the potatoes.

Hiner, Bunch & Latimer and Thomas H. Gill, for plaintiff in error.

Thomas Marshall, for defendants in error.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

At the outset of this controversy the parties diverge on the proposition whether we are concerned with a contract entered into in Wisconsin or one entered into in Illinois. Plainly the contract involved is an Illinois contract. When the parties made an agreement in Wisconsin the defendant only agreed to carry the potatoes to "Chicago, Ill.," and to "Hold at Kolze for instructions." Without the minds of the parties meeting again the potatoes would go no farther than Chicago, Illinois.

It is contended by defendant with reference to the addition to the Wisconsin bill of lading made in Chicago: "These words do not make a new contract. They simply change the old one. A new agreement is not established by them, but an existing agreement is *changed at Chicago.*" We understand that an agreement when changed, by the mutual consent of the parties, becomes a new agreement. An agreement changed is not the old or prior agreement but a new one. When there is a change the minds of the parties have met again and by the fact of the change a new agreement arises. The minds of the parties may thus meet upon the terms of the old agreement with but the slightest change, yet the agreement then made is a new one. If the parties to a Wisconsin contract, partially performed, come together in Illinois, make some changes in their contract and then reaffirm it the new contract is an Illinois contract. While the potatoes were still in the possession of the carrier the plaintiffs and the defendant's agent came together at Chicago. The destination, if not the consignee, was changed and a specified route to Hattiesburg, Mississippi, was agreed upon. The changes agreed upon were endorsed or stamped upon the bill of lading the plaintiffs already had. Thereby the terms of the then existing bill of lading, or agreement of the parties, so far as lawful at the place of contract and not

inconsistent with the addition then made, were incorporated in the new agreement.   This was on October 12, 1906.   The defendant then, as a common carrier, undertook with the plaintiffs that the potatoes should reach their new destination at Hattiesburg.   According to the new contract the defendant undertook to deliver the car to the Illinois Central for further forwarding to Hattiesburg.   The distance the car was to be transported upon the defendant's own tracks may have been very short or very long—whatever may be true in that respect does not affect the relation that arose between the parties.   The change, at Chicago, in the bill of lading, will not permit us to infer that, thereafter, the defendant sustained toward the plaintiffs merely the relation of agent or representative to turn over the car to the Illinois Central, for the previously existing bailment of the potatoes continued.   There is no merit in defendant's contention in that respect. The new contract created the relation of shipper and common carrier for delivery in Hattiesburg to the consignee, The Mahaffey Company itself.   The defendant delayed four days, from October 12th to October 16th, in transferring the potatoes to the Illinois Central.   It may not be material, but the fair inference is that the potatoes froze during that delay and considering the season of the year, not after they started into Mississippi.

Counsel for defendant assumes and asserts that the Pullen Produce Company "stood in the relation of consignee," or must be considered as the agent of the plaintiffs.   Either assumption necessarily leads to error.   We do not find either to be justifiable.   The consignee was, expressly, The Mahaffey Company itself and no one else.   No evidence permitting us to infer any such agency appears.

Upon the conclusion that the parties made a contract in Illinois it naturally follows that the defendant assumed the duties and obligations of an initial common carrier according to the law of this state.

A common carrier is an insurer of goods entrusted to him and accountable for the loss thereof or any damage thereto unless shown to have happened by the act of God or the public enemy or to have been occasioned by an act of the shipper or some one in his position. But the burden of proving exoneration is always upon the carrier. C. & N. W. R. R. Co. v. Sawyer, 69 Ill. 285; Western T. Co. v. Newhall, 24 Ill. 466; I. C. R. R. Co. v. McClelland, 54 Ill. 58; I. C. R. R. Co. v. Frankenberg, 54 Ill. 88; C. & A. R. R. Co. v. Shea, 66 Ill. 471; M. S. & N. I. R. v. Day, 20 Ill. 375. Perhaps this rule of liability as insurer does not extend to live stock and perishable goods, but that is now immaterial. The initial carrier is liable for the acts of all succeeding carriers for the entire route. St. L. & S. W. Ry. Co. v. Elgin M. Co., 175 Ill. 557; I. C. R. R. Co. v. Frankenberg, 54 Ill. 88; Coats v. C., R. I. & P. Ry. Co., 134 Ill. App. 217; I. C. R. R. Co. v. Copeland, 24 Ill. 332.

When the car of potatoes reached Jackson, Mississippi, the common carrier then having them in charge did not follow the terms of the contract of bailment, but departed therefrom and sent the potatoes by way of the Gulf & Ship Island Railroad instead of by the Queen and Crescent Railroad, as the contract provided. Then, when the Ship Island Railroad landed the potatoes at Hattiesburg a large part of them was found to be frozen and, after inspection, the purchaser, the Pullen Produce Company, refused, as it undoubtedly lawfully might refuse, to take them. Thereupon the agent of this interposed common carrier, the Ship Island Railroad, sold the potatoes and retained the proceeds for the freight thereof, without notice to any one. Thus the potatoes were wholly lost to the plaintiffs. There is no question raised but what the plaintiffs are entitled to recover for the loss and to us it appears that there is no question but what the plaintiffs can recover from the defendant herein in *assumpsit* upon the contract.

Some question is made by the plaintiff in error to the effect that the record fails to show any basis for the amount awarded as damages. In the Statement of Facts by the trial court it is stated as a fact the value of the potatoes was 74 cents per bushel. We must presume that in its Statement of Facts, made for the express purpose of permitting review, the court states material and not immaterial facts. The value of the potatoes at Hattiesburg, not elsewhere, is material. Consequently the plaintiffs' 500 bushels of potatoes were worth, at Hattiesburg, $370. We then deduct from that amount the freight to that point testified to be $153 and this leaves $217, the amount of the judgment of the trial court, which is affirmed.

*Affirmed.*