KATHLEEN D. BARRETT, Plaintiff-Appellant, *v.* WALTER LAWRENCE *et al.*, Defendants-Appellees.

First District (4th Division)   No. 82—1434

Opinion filed November 12, 1982.

David J. Letvin and Kerry L. Kessler, of Chicago (Rosenthal and Schanfield, of counsel), for appellant.

Brian G. Hubka, of Chicago, for appellees.

JUSTICE ROMITI delivered the opinion of the court:

Plaintiff entered into a contract to purchase a condominium. While several payments were made, title has not yet passed to plaintiff. She filed suit to force defendants to put the monies paid in escrow, as required by section 24 of the Condominium Property Act (Ill. Rev. Stat. 1979, ch. 30, par. 324). The trial court denied the petition, ruling (1) that the statute was not applicable and (2) that plaintiff unduly delayed in asserting her demand for the escrow account. We reverse the judgment of the trial court, holding that: (1) since title under the original contract was to pass within a year, the fact that the contract was later amended to provide for passage within a year of the amendment but more than a year after the date of the original contract did not take the contract out of the scope of the statute; (2) plaintiff had no duty to require defendants to comply with the statute, especially since defendants failed to show plaintiff was aware of defendants' violation of the statute until shortly before suit was filed; and (3) an injunction is the proper remedy where a seller refuses or fails to establish the escrow account required by statute.

Plaintiff entered into a contract with the defendant on March 18, 1981, to purchase a condominium. Plaintiff was to pay $1,000 upon execution of the contract, and $7,000 on April 1, 1981, both sums to be held by the broker and paid to the sellers on the date possession was delivered. She was to pay $3,850 upon the date possession was delivered, and the principal balance of $79,650 with 13% interest was to be paid in installments, with the final payment due on December 1, 1981, at which time title would be conveyed to plaintiff. All of the earnest money was to be deposited in an interest-bearing escrow account, the interest to be paid to plaintiff. There was no provision in the contract stating that defendants did not intend to comply with the statutory requirement that all payments on the purchase price be

placed in escrow.

On December 7, 1981, this contract was amended. The amendment provided that the final date for payment and thus the date for the conveyance of title was to be extended to January 1, 1982, and thereafter without further action of the parties to April 1, 1982. In return it was agreed that the sums paid each month after the date of the amendment were to be treated as payment of interest, not principal, and defendants were to have the right to mortgage the property.

In January 1982, plaintiff filed suit for rescission of the contract. On January 22 her attorneys wrote defendants' attorney asking the identity of the escrow agent and the current balance and its amount of interest in the account. The record does not disclose whether the letter was answered, but plaintiff apparently discovered that no escrow account had been established, despite the fact it was required by statute. Accordingly, on April 15, 1982, plaintiff filed a motion to compel the establishment of the escrow account required by statute. Defendants in their response contended: (1) because of the amendment extending the date for conveyance of title, the contract did not fall within the scope of the statute; (2) an order compelling them to establish an escrow account would cause them undue hardship because they had paid brokerage commissions, attorney fees, title, transfer taxes and other costs relating to the sale; (3) plaintiff was barred by *laches* because she never requested that an escrow account be established; in fact, defendants contended that plaintiff knew there was no escrow account although there was absolutely no proof to this effect; and (4) plaintiff had an adequate remedy at law. The trial court denied the motion on the grounds that (1) the statute was not intended to apply to the facts here and (2) there was undue delay by plaintiff in asserting the demand to establish the escrow account.

Section 24 of the Condominium Property Act (Ill. Rev. Stat. 1979, ch. 30, par. 324) provides:

"Any deposit, payment or advance in the payment of the purchase price for a unit, received by the developer or his agent other than a payment made for extra work ordered in writing by the purchaser of a unit, shall be held in an escrow account until title is conveyed to the purchaser. The escrow funds shall be segregated in a separate account designated for this purpose. For all contracts entered into after the effective date of this amendatory Act of 1979, the escrow account shall bear interest at 5% per year, all such interest to be credited to the purchaser on the purchase price of the unit. Where the deposits are being held by a real estate broker duly licensed under the

laws of Illinois, the funds may be placed in the broker's regular escrow account. Escrow funds shall not be subject to attachment by any creditor of a purchaser or of the developer or by the holder of a lien against any portion of the property.

The provisions of this Section shall not apply to any payment received on account for the purchase of a completed condominium unit under articles of agreement for deed, installment agreement for deed, or lease with option to purchase, if the agreement provides for conveyance of title more than one year after the date of execution of the agreement."

The agreement of March 18, 1981, provided for the transfer of title on December 1, 1981, less than a year after the execution of the agreement. The agreement of December 7, 1981, provided for the transfer of title at the latest by April 1, 1982, less than one year after the execution of that agreement.

I

■ Defendants contend that the amendment did not create a new agreement but simply extended the time of the old agreement. Therefore, since the date of the only contract made, according to defendants, was March 18, 1981, the final agreed date for transfer of title was more than one year after the date of execution of the contract and the statute is inapplicable. (Both sides appear to assume that the condominium was completed when the contract was executed since it is clear that the statute is applicable to all uncompleted units regardless of the delay before passage of title.) However, the law is to the contrary. An agreement when changed by the mutual consent of the parties becomes a new agreement which takes the place of the old. (*Mahaffey v. Wisconsin Central Ry. Co.* (1909), 147 Ill. App. 43; *Beacon Terminal Corp. v. Chemprene, Inc.* (1980), 75 A.D.2d 350, 429 N.Y.S.2d 715, *appeal denied* (1980), 51 N.Y.2d 706, 433 N.Y.S.2d 1026; 17A C.J.S. *Contracts* sec. 379 (1963); 17 Am. Jur. 2d *Contracts* sec. 470 (1964); and see *Folstad v. Farmers Insurance Exchange* (1973), 297 Minn. 496, 210 N.W.2d 238; *La Canin v. Automobile Insurance Co.* (E.D. N.Y. 1941), 41 F. Supp. 1021 (both holding that while it is axiomatic that a newly enacted statute does not control and alter a preexisting contract, it is applicable where the contract is modified after the statute's enactment).) As the court in *Mahaffey* stated:

"It is contended by defendant with reference to the addition to the Wisconsin bill of lading made in Chicago: 'These words do not make a new contract. They simply change the old one. A new agreement is not established by them, but an existing

agreement is *"changed at Chicago."* ' We understand that an agreement when changed, by the mutual consent of the parties, becomes a new agreement. An agreement changed is not the old or prior agreement but a new one. When there is a change the minds of the parties have met again and by the fact of the change a new agreement arises. The minds of the parties may thus meet upon the terms of the old agreement with but the slightest change, yet the agreement then made is a new one. If the parties to a Wisconsin contract, partially performed, come together in Illinois, make some changes in their contract and then reaffirm it the new contract is an Illinois contract." (147 Ill. App. 43, 46.)

It follows, therefore, that at no time was the agreed-upon date for transfer of title more than a year after the execution of the pertinent contract.

■ Accordingly, we hold that the statute is clearly applicable and defendants are required by the statute to put "any deposit, payment or advance in the payment of the purchase price" in an escrow account bearing interest at 5%, such interest to be credited to the purchaser on the purchase price of the unit. For this reason we need not address the question whether, since the sellers were obligated to put the funds in escrow before December 7, 1981, if the amendment on that date had extended the time for transfer to a date more than one year after the making of the contract, the amendment would have absolved the sellers from their preexisting duty.

## II

■ The trial court also based its refusal to grant the injunction on the basis that plaintiff had unduly delayed in making a demand for an escrow account. However, since the statute imposes the duty upon the defendants to establish the escrow account, it was not necessary for plaintiff also to make a demand. Furthermore, before *laches* can be found it must be proved that the plaintiff knew that no escrow account was created. (*Ballard v. Granby* (1980), 90 Ill. App. 3d 13, 412 N.E.2d 1067; *Mitchell v. Simms* (1979), 79 Ill. App. 3d 215, 398 N.E.2d 211, *appeal denied* (1980), 79 Ill. 2d 631; *Harden v. Desideri* (1974), 20 Ill. App. 3d 590, 315 N.E.2d 235, *appeal denied* (1974), 57 Ill. 2d 604.) Defendants have failed to produce any evidence at all tending to prove that plaintiff either knew or ought to have known that no escrow had been created until sometime after the letter was written on January 22, 1982. Of course, the letter put defendants on notice that plaintiff was relying on her statutory rights. Thus, even if

the delay between the writing of the letter and the filing of the suit was unreasonable, and there is no evidence that it was, defendants could not have been prejudiced by the delay and *laches* cannot be found absent prejudice. *DeBruyn v. Elrod* (1981), 84 Ill. 2d 128, 418 N.E.2d 413; *People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108, 370 N.E.2d 499.

## III

■ Defendants next contend that the injunction was properly denied because the motion seeking the injunction was not verified. However, the defendants have cited no statute requiring verification where, as here, notice and hearing are provided, and in fact there is no such requirement. Furthermore, since the issue was never raised below, any defect would have been waived. Ill. Rev. Stat. 1981, ch. 110, par. 42(3).

## IV

Defendants next contend that the trial courts are invested with a broad discretion in the issuance or denial of injunctive relief and that the issuance or denial of an injunction will not be disturbed on appeal unless the trial court's findings are against the manifest weight of the evidence, citing *Illinois Housing Development Authority v. Arbor Trails Development* (1980), 84 Ill. App. 3d 97, 404 N.E.2d 1097. However, the trial court's refusal was based on two grounds only: (1) the statute was inapplicable and (2) plaintiff's demand was untimely. As we have already held, the first finding is contrary to law and the second unsupported by any evidence in the record.

## V

Finally, defendants contend that the plaintiff is seeking a temporary injunction and thus must prove that (1) there is a clearly ascertained right which needs protection, (2) there will be irreparable injury, (3) there is no adequate remedy at law, (4) there is substantial likelihood of success on the merits, and (5) in the absence of preliminary relief plaintiff will suffer a greater injury than would defendants if relief is granted (*Dock Club, Inc. v. Illinois Liquor Control Com.* (1980), 83 Ill. App. 3d 1034, 404 N.E.2d 1050). Defendants further contend that a preliminary injunction can only be granted to preserve the status quo (*John Deere Co. v. Hinrichs* (1962), 36 Ill. App. 2d 255, 183 N.E.2d 309), and an injunction here would disturb the status quo.

As we have already stated, plaintiff has a clearly ascertained right to have an escrow account drawing 5% interest from March 18, 1981,

established. Defendants, however, contend that there is no proof there was an inadequate remedy at law because plaintiff has not shown defendants are insolvent. This argument is not persuasive in light of the fact that defendants also argue it would be a grave hardship for them to have to put the money in escrow because they have already spent it. This is immaterial, however, since the legislature has already found that the remedy at law is inadequate and this court will not sit as a superlegislature to overrule its determination. It is evident from the legislative history of the Act (80th Ill. Gen. Ass'y, Senate Debates, May 25, 1977, at 64-66) that the legislature enacted this statute because it did not consider the buyer's remedy of seeking to recover the funds paid to be adequate, but determined that it was necessary for a security fund to be created to protect a condominium purchaser when title is not to be conveyed immediately.

For the same reason it is clear that the injury is irreparable. The absence of the security fund required by statute is that species of injury that ought not to be submitted to on the one hand or inflicted on the other. (*Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 422 N.E.2d 953; *Edelman Brothers v. Baikoff* (1934), 277 Ill. App. 432.) Moreover, the only adequate remedy and recompense for the absence of required security is to provide the security; damages at law, while satisfying the original debt, do not atone for the period of time the creditor had an unsecured rather than secured debt.

There has been no showing that the defendants will suffer great harm and the plaintiff only little benefit if the escrow account required by law is established. (*Biggs v. Health & Hospitals Governing Com.* (1977), 55 Ill. App. 3d 501, 370 N.E.2d 1150.) In any event it has been recognized that there will be no balancing of equities where the violation is wilful (*Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 362 N.E.2d 382, *appeal denied* (1977), 66 Ill. 2d 631), where, as here, the existence of a private right and violation thereof are clear (*Rosehill Cemetery Co. v. City of Chicago* (1933), 352 Ill. 11, 185 N.E. 170), or where the act complained of is tortious in itself (42 Am. Jur. 2d *Injunctions* sec. 60 (1969)).

> "An injunction should be granted to restrain a wilful, wanton, or unprovoked wrong although the loss to the defendant will be greater than the injury to his adversary from its refusal, for no balancing of the inconveniences of private parties will be indulged when the act complained of is tortious in itself as well as in its incidents, and the preservation of a clear right is involved. In such cases, the wrongdoer is not entitled to the benefit of any consideration in a court of equity, nor can it be said

that injury would result from the injunction, for no man can complain that he is injured by being prevented from doing, to the hurt of another, and which he has no right to do." (42 Am. Jur. 2d *Injunctions* sec. 60 (1969).)

Here, to paraphrase, defendants cannot complain that they are injured by being prevented from using the money (to plaintiff's injury) when, because of the statute, they have no right to use it. Likewise, they cannot complain that they are forced to establish the escrow account when they are required by statute to establish one.

As to the likelihood of plaintiff's success on the merits, the question is not whether plaintiff can recover in the rescission action but whether she is entitled to the establishment of the escrow account.

Finally, defendants argue that since the injunction sought is a temporary injunction, it would be improper since a temporary injunction must maintain the status quo and cannot be used to transfer property from one party to another. (*John Deere Co. v. Hinrichs* (1962), 36 Ill. App. 2d 255, 183 N.E.2d 309.) As plaintiff points out, however, equity deems done that which should have been done (*Shay v. Penrose* (1962), 25 Ill. 2d 447, 185 N.E.2d 218; *Ward v. Sampson* (1946), 395 Ill. 353, 70 N.E.2d 324; *Crawford v. Wyant* (1936), 284 Ill. App. 336, 1 N.E.2d 766; *Mackey v. Sherman* (1931), 263 Ill. App. 109), and the statute clearly required the establishment of the escrow account. Furthermore, it has been recognized that the rule does not prohibit the issuance of a preliminary injunction transferring possession from a litigant to the court. (*State ex rel. Donley v. Baker* (1932), 112 W.Va. 263, 164 S.E. 154; Annot., 15 A.L.R.2d 213, 277 (1951); 42 Am. Jur. 2d *Injunctions* sec. 79 (1969).) Similarly, here the funds are not being transferred from one litigant to another but to escrow.

More importantly this court is not persuaded that defendants' major premise that the injunction sought is only a preliminary injunction is accurate. A preliminary or interlocutory injunction is issued before any hearing on the merits. It is not issued to determine any controverted right but merely to prevent a threatened wrong and to protect the property or rights involved from further injury until the equities can be determined after a full examination or hearing and its provisions are merged in the decree for the permanent or final injunction. (*City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 380 N.E.2d 1106, *appeal denied* (1979), 72 Ill. 2d 581; 42 Am. Jur. 2d *Injunctions* sec. 13 (1969).) It is an injunction issued *pendente lite* and is an ancillary remedy; it cannot be maintained as the sole relief sought. *P.S.L. Realty Co. v. Granite Investment Co.* (1976), 42 Ill. App. 3d 697, 356 N.E.2d 605.

■ The injunction sought here is not a preliminary injunction but rather a permanent or more accurately final injunction, since not all final injunctions last permanently. (See *Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 134 N.E.2d 329.) It is not an ancillary remedy dependent on another action. While the plaintiff filed an action for rescission, the action to compel the establishment of the escrow account was in no way dependent on it. The plaintiff would still be entitled to escrow if the parties settled the rescission action and agreed on a conveyance of title a few months after the settlement agreement. Likewise, the injunction is not being mandated before a hearing on the merits; the sole issue here is whether the plaintiff is entitled to the establishment of the escrow account and that issue has already been determined.

■ In short, we hold that since plaintiff was entitled to the establishment of an escrow account with 5% interest running from the date when the separate payments were made, the trial court erred in refusing to order the establishment of the escrow account. Accordingly, we reverse the judgment with instructions that the trial court order defendants to establish the escrow account.

Reversed and remanded with instructions.

JOHNSON, P.J., and LINN, J., concur.