CARRIAGE WAY APARTMENTS, Plaintiff and Counterdefendant-Appellant, v. HELEN S. POJMAN *et al.*, Defendants and Counterplaintiffs-Appellees (James P. Avgeris *et al.*, Indiv. and d/b/a Carriage Way Apartments, Plaintiffs-Appellants).

Second District   Nos. 2—88—0085, 2—88—0155 cons.

Opinion filed July 27, 1988.

Patrick J. Williams, of Connolly & Ekl, P.C., of Clarendon Hills, and Walter P. Maksym & Associates, of Oak Brook (Walter P. Maksym, Jr., of counsel), for appellants.

Nicholas J. Galasso, of Joseph M. Laraia & Associates, P.C., of Wheaton (Joseph M. Laraia, of counsel), for appellees.

JUSTICE INGLIS delivered the opinion of the court:

This is an interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) taken from a preliminary injunction entered against plaintiffs. We reverse.

On appeal, plaintiffs contend (1) that the trial court's summary award of a mandatory injunction was tantamount to a prejudgment attachment and violated due process; (2) that plaintiffs failed to demonstrate the lack of an adequate monetary remedy at law; (3) that the trial court abused its discretion in summarily granting a preliminary mandatory injunction without proper pleading or proof, and without bond; (4) that the trial court was divested of jurisdiction to

modify its January 25, 1988, order due to the pendency of defendants' notice of appeal; (5) that the preliminary injunction order should be dissolved because the record is insufficient to sustain its issuance without bond; and (6) that the preliminary mandatory injunction alters the status quo and therefore requires reversal.

The entitled litigation involves a real estate partnership entered into between plaintiffs, James J. Avgeris, Margaret P. Rathje, S. Louis Rathje, Allen Koranda, Kenneth Koranda, and defendants, Helen S. and H. Steven Pojman.

The partnership agreement provided for the purchase, lease, development, and sale of an apartment complex in Burr Ridge, Illinois, commonly known as Carriage Way Apartments. Pursuant to the partnership agreement, defendants each owned 8.33% of the partnership assets, profits, and losses. The partnership agreement also provided that when a partner retired from the partnership the remaining partners were to buy out the retiring partner's interest.

The above litigation originated when the partnership, pursuant to the partnership agreement, filed an action seeking the appointment of an appraiser to determine the value of the partnership real estate. The complaint alleged that defendants had given notice to the partners that they intended to withdraw from the partnership and requested that, since the appraisers retained by defendants and the remaining parties could not agree upon the value of the property or the appointment of a third appraiser, the court determine and appoint a third appraiser whose opinion concerning the value of the real estate would be final. The complaint was later amended to include James P. Avgeris, Margaret P. Rathje, S. Louis Rathje, Allen Koranda, and Kenneth Koranda, individually and d/b/a Carriage Way Apartments, a partnership, as plaintiffs.

On May 14, 1985, the court appointed Thomas Collins to conduct an appraisal of the partnership real estate and to report his determination of value to the court.

Collins filed two appraisals with the court. On June 13, 1985, defendants filed a motion for leave to file a counterclaim against the partnership and a third-party complaint against the remaining plaintiffs. It is unclear as to why defendants filed a third-party complaint when the alleged third-party defendants had already been named as plaintiffs.

The trial court, on plaintiffs' motion, struck and dismissed counts I, II, and III of the counterclaim but denied plaintiffs' motion to strike and dismiss count IV, which prayed for an accounting. This court entered a Rule 23 order (107 Ill. 2d R. 23) affirming the deci-

sion of the trial court. (*Avgeris v. Pojman* (1986), 144 Ill. App. 3d 1180 (unpublished Rule 23 order).) The mandate was filed in the trial court, and the case proceeded on count IV of the Pojmans' counterclaim and third-party complaint.

Defendants claim that they subsequently served written notice upon all of the remaining partners that Mrs. Pojman was withdrawing her notice to withdraw from the partnership since the withdrawal was not perfected, and H. Steven Pojman, her son, served notice on the remaining partners that he had never tendered a withdrawal, and if he had tendered a withdrawal, that he was withdrawing that notice because the withdrawal was not perfected. However, in their answer to the complaint the Pojmans admitted paragraph 6 of the complaint, which stated "that on June 25, 1984, Defendants caused written notification to be served upon all other partners that Defendants were retiring from the partnership."

The Pojmans requested, and were granted, leave to file an amended counterclaim and third-party complaint in which they sought an accounting, a declaratory judgment to declare that they were still partners of the partnership and entitled to all of the rights as partners, and a temporary and permanent injunction to restrain the partners and the partnership from disbursing defendants' interest in the proceeds of any sale of the partnership property.

Plaintiffs filed an answer and motion to dismiss defendants' counterclaim and third-party complaint, which motion to dismiss has not been heard.

Thereafter, on January 19, 1988, defendants served a notice of motion and a copy of an emergency petition for injunctive relief and damages based on conversion of funds which notice called for hearing *instanter* on January 25, 1988, at 9:30 a.m. before the Honorable John Teschner. The emergency petition alleged that the partnership property had been sold and that all proceeds from such sale had been distributed without payment to the Pojmans of their proportional share.

Plaintiffs did not file a response to the emergency petition, but instead appeared through counsel of record and requested a continuance. Counsel for plaintiffs acknowledged that the property was sold for a price which he believed was in excess of $8.1 million. He also acknowledged that the proceeds had been distributed to all of the partners to the partnership except for the Pojmans.

After recessing to review the emergency petition, the court resumed the bench and acknowledged that there was a pending dispute existing in the matter as to the amount of funds defendants were to

receive and whether they were entitled to benefits as a withdrawing partner and whether the withdrawal ever took place or had been rescinded. Plaintiffs' counsel requested seven days to find out whether the funds had been dissipated by his clients and what their intentions were. He further stated that two of his clients, the Korandas, had placed funds in an escrow account and asked that he be given seven days in which to allow the remaining plaintiffs to do something similar. He asked that in the interim the court "enter an order against the plaintiffs that there be a hold on any funds that were received by any of the plaintiffs pursuant to the closing and that they be prohibited from dissipating any of those funds."

The court entered the January 25, 1988, order which required plaintiffs to deposit into an escrow account, or several escrow accounts, the aggregate sum of $1,249,000; that plaintiffs provide defendants with a copy of the closing documents concerning the sale of the partnership property on or before January 28, 1988; and that plaintiffs appear in court on January 28, 1988, at 9:30 a.m. and show proof that the funds had been deposited. The court issued the injunction without bond.

On January 28, 1988, before the hearing set for that date, plaintiffs filed a notice of appeal from the order of January 25, 1988. When the matter came before the court at 9:30 a.m., plaintiffs' attorney presented the closing documents which pertained to the sale of the partnership real property. The closing documents apparently disclosed that the sale had occurred on June 25, 1987, for a purchase price of $8,412,000 and that the aggregate net proceeds of the sale were $6,276,210.

The court asked plaintiffs' counsel where defendants' funds were located. In response, counsel presented two passbooks from Mid America Savings and Loan Association which each showed that $98,000 had been deposited into an account by Al Koranda and Kenneth Koranda for a total of $196,000. Both accounts showed plaintiffs' counsel, Patrick Williams, as escrow agent.

Plaintiffs' counsel orally moved the court to stay further enforcement of the order of January 25, 1988. The court ordered that plaintiffs' motion to stay be reduced to writing and filed by 5 p.m. on the same day to be heard at 9:30 a.m. the following morning, January 29, 1988. The court continued the case to the following day, January 29, 1988, at 9:30 a.m. for James Avgeris, S. Louis Rathje and Margaret P. Rathje to produce the funds required to be posted in the January 25, 1988 order. The court ordered that the sum of $196,000, posted by Allen and Kenneth Koranda, remain in escrow subject to

further order of the court.

On January 29, 1988, the matter came before the court pursuant to the order of January 28, 1988, for hearing on plaintiffs' motion to stay enforcement of the mandatory injunction. After hearing, the court denied plaintiffs' motion to stay enforcement.

The court granted defendants' motion to file an amended emergency petition based upon the information provided to them in the closing documents. Defendants' verified amended emergency petition modified the original petition to conform to the sums set forth in the closing documents and reduced the amount requested to be posted from $1,249,000 to $1,044,534.69. The amended petition prayed the court to enter an order requiring the immediate payment to defendants of at least $490,061.54.

On January 29, defendants also filed a verified petition for a rule to show cause why James P. Avgeris, S. Louis Rathje and Margaret P. Rathje should not be held in contempt of court for failing to comply with the court's order of January 25, 1988, by not placing into escrow the funds of defendants being held by them.

On January 29, 1988, the hearing on defendants' amended emergency petition and petition for a rule to show cause came up for hearing. Plaintiffs again moved the court to stay the enforcement of the injunction, which motion was denied. The court granted defendants leave to file their amended emergency petition. In the proceedings which occurred, the court summarized the basis of its rule of January 25, 1988. The trial court stated the basis for granting the emergency relief was that he was maintaining the status quo. The court entered a rule to show cause why James P. Avgeris, S. Louis Rathje, and Margaret P. Rathje should not be held in contempt of court for failing to appear and show proof of where the money was and whether it had been segregated and made the rule returnable on February 2, 1988, at 9:30 a.m.

On February 1, 1988, the matter again came before the court for hearing on defendants' petition for a rule to show cause and their amended emergency petition for injunctive relief. Plaintiffs filed a motion to dismiss. They agreed that one of the partners, James Avgeris, post a certificate of deposit in the amount of $344,000 *instanter* and an additional $71,000 within 14 days to total the funds of defendants which had been disbursed to him at the time of closing. James Avgeris posted said funds without prejudice to his rights concerning the adequacy thereof or other matters before the court. The court amended the order of January 25, 1988, to reduce the amount to be segregated by the partners from $1,249,000 to $1,044,000 and

denied plaintiffs' motion to dismiss the amended emergency petition. The court further granted leave to plaintiffs to file a response to the amended emergency petition.

On February 2, 1988, the matter came before the court, and the rule to show cause issued against Margaret P. Rathje and S. Louis Rathje was dismissed upon their showing that they had segregated the sum of $431,534.69 in an account at the Affiliated Bank Group. Counsel for plaintiffs presented a motion to vacate the orders of January 25, 1988, January 29, 1988, and February 1, 1988, which motion was denied after hearing argument of counsel and considering the pleadings and evidence.

On February 2, 1988, the partners filed a second notice of appeal from the orders entered on January 29, 1988, and February 1, 1988. This second appeal has been consolidated with the appeal filed on January 28, 1988.

We first address plaintiffs' contention that the trial court was divested of jurisdiction to modify its order of January 25, 1988, due to the pendency of plaintiffs' appeal.

■ The effect of the filing of a notice of appeal is to restrain the trial court from either changing or modifying the order as entered. (*Lindsey v. Board of Education* (1984), 127 Ill. App. 3d 413, 418.)

> "The general rule is that the filing of an appeal divests the trial court of jurisdiction; however, the trial court retains jurisdiction to determine matters collateral or incidental to the judgment. [Citation.] Collateral or supplemental matters include those lying outside the issues in the appeal or arising subsequent to delivery of the judgment appealed from." *In re Estate of Denaro* (1983), 112 Ill. App. 3d 872, 878.

Specifically, notice of appeal deprives a court of jurisdiction to allow amendment to pleadings. See *Brehm v. Piotrowski* (1951), 409 Ill. 87, 90; *Butler v. Palm* (1962), 36 Ill. App. 2d 351, 366.

In the instant case, the order of February 1, 1988, provided, in pertinent part:

> "IT IS HEREBY ORDERED THAT:
>
> A. The sum of $98,000 posted by Allen Koranda and the sum of $98,000 posted by Kenneth Koranda remain in escrow ***.
>
> B. The third-party Defendant [plaintiffs] James P. Avergis [*sic*] deposit the additional sum $72,670, along with the Certicate [*sic*] of Deposit No 200004252 in the amount of $344,330.00 at Mid America Federal Savings and Loan under

a Management Hold ***.

C. The third party Defendants' Motion to Dismiss the Amended Emergency Petition for Injunctive Relief is denied.

D. The Rule to Show Cause as to James P. Avergis [*sic*] is hereby dismissed.

E. Third Party Defendants S. Louis Rathje and Margaret Rathje file Answer to the Rule to Show Cause on or before 2/2/88 and further hearing thereon be, and is hereby, set for Feb. 2, 1988 at 11:00 A.M.

E. [*sic*] That the Order of January 25, 1988 be amended to reduce the Amount to be posted from $1,249,000.00 to 1,044,534.69."

■ The modification of the injunction is not collateral to the injunction since it modified the injunction by changing the amount to be posted from $1,249,000 to $1,044,534.69 and ordered individual plaintiffs to post specified amounts. Consequently, we find that the trial court was without jurisdiction to modify its order of January 25, 1988. Accordingly, those parts of the February 1, 1988, order which modified the total amount to be posted and ordered individual plaintiffs to post specified sums are therefore void.

We next address plaintiffs' contention that the injunction was improper because the court failed to hold a hearing prior to issuing the injunction.

■ The granting of a preliminary injunction rests within the sound discretion of the trial court (*Schlicksup Drug Co. v. Schlicksup* (1970), 129 Ill. App. 2d 181, 186) and will only be overturned where there has been an abuse of discretion (*Hawthorne Bank v. Village of Glen Ellyn* (1987), 154 Ill. App. 3d 661, 666; *Schlicksup Drug Co.*, 129 Ill. App. 2d at 186). Before a preliminary injunction will be granted, the party seeking the injunction must establish the probability of ultimate success on the merits, the need for the injunction to preserve the status quo and to prevent irreparable harm to his or her rights or property. 129 Ill. App. 2d at 186.

■ Where no answer has been filed, an injunction may be granted solely on the sufficiency of the complaint. (*Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B* (1975), 27 Ill. App. 3d 500, 504; *Schlicksup Drug Co.*, 129 Ill. App. 2d at 186-87.) However, where an answer has been filed, both the answer and the complaint must be considered, and when the answer contains denials of material allegations, a hearing must be held prior to the granting of an injunction. (129 Ill. App. 2d at 187.) "The nature of such hear-

ing depends on the status of the pleading, a hearing or legal arguments generally being required on the issue of whether the standards are met for issuance of the order, and an evidentiary hearing required where there is a question of material fact. Thus, such a hearing is not required where no answer is filed." *Kable Printing Co.*, 27 Ill. App. 3d at 504; see also *Lindsey v. Board of Education* (1984), 127 Ill. App. 3d 413, 419 ("A prior evidentiary hearing is required only where questions of material fact exist"); *Kurle v. Evangelical Hospital Association* (1980), 89 Ill. App. 3d 45, 48 ("[I]t is the law in this State, that, on a motion for a temporary injunction, where the defendant has not answered the complaint and where issues have not been joined, the court should not receive or consider evidence or affidavits").

■ Since plaintiffs filed no answer to the complaint for the injunction in the instant case, an evidentiary hearing was not required. Consequently, the injunction was not made improper due to the lack of an evidentiary hearing.

We next address plaintiffs' contention that the injunction should be dissolved because it was entered without bond.

■ Section 11—103 of the Code of Civil Procedure provides in pertinent part:

> "The court *in its discretion*, may before entering a restraining order or a preliminary injunction, require the applicant to give bond *** for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 11—103.)

In the instant case, the funds were put into escrow, and thus, the potential for any loss was minimal. Consequently, we find that the trial court did not abuse its discretion in not requiring defendants to post bond.

We next address plaintiffs' contention that the injunction should be dissolved because it changed the status quo. Plaintiffs argue that prior to entry of the injunction they had possession and control over the funds and that the injunction changed the possessory status. In response, defendants contend that the status quo was not altered due to the fact that the status quo was that a suit was pending to determine defendants' interest.

■ The status quo to be preserved is the last actual, peaceable, uncontested status which preceded the controversy. *Lindsey v. Board of Education* (1984), 127 Ill. App. 3d 413, 419; *Schlicksup Drug Co. v. Schlicksup* (1970), 129 Ill. App. 2d 181, 187.

In *John Deere Co. v. Hinrichs* (1962), 36 Ill. App. 2d 255, 269, it was stated that it is not the purpose of an injunction to compel a party to undo what he has already done or take property out of the possession of one party and put it in the possession of another. This rule does not, however, appear to prohibit a temporary injunction which places money in escrow. In *Barrett v. Lawrence* (1982), 110 Ill. App. 3d 587, 594, the defendants argued that a temporary injunction could not be issued ordering defendants to establish an escrow account since such an order would change the status quo. However, the court found that the requirement of maintaining the status quo did not bar such an order. (110 Ill. App. 3d at 594.) The court noted the rule requiring maintenance of the status quo did not prohibit transferring of funds to the court and that the funds in the case before it were not being transferred from one litigant to another but to escrow. 110 Ill. App. 3d at 594.

■■ In the instant case, the gravamen of the emergency petition was that proceeds from the sale of the partnership realty had been distributed to the plaintiffs. Consequently, the last peaceable uncontested moment *vis-a-vis* the emergency petition was the time directly prior to distribution of assets to plaintiffs.

Therefore, the status quo was not changed in the instant case because at the last peaceable uncontested moment funds from the sale had not been distributed. Furthermore, the injunction does not violate the prohibition against undoing what has already been done, due to the fact the funds were ordered to be placed in escrow. Therefore, we find that the injunction was not improper on the ground that it changed the status quo.

Plaintiffs next contend that the injunction entered in the present case amounted to a prejudgment attachment and was therefore in error. Defendants respond that the injunction was proper because it related to specific funds.

■■ Attachment is a remedy by which a party's property is secured and held to satisfy a debt that the other party hopes to prove. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 278; see also *Peter Fisher Import Motors, Inc. v. Buckley* (1984), 121 Ill. App. 3d 906, 910.) Section 4−101 of the Code of Civil Procedure provides:

> "In any court having competent jurisdiction, a creditor having a money claim, whether liquidated or unliquidated, and whether sounding in contract or tort, may have an attachment against the property of his or her debtor, or that of any one or more of several debtors, either at the time of commencement of the action or thereafter, when the claim exceeds $20, in any

one of the following cases:

1. Where the debtor is not a resident of this State.

2. When the debtor conceals himself or herself or stands in defiance of an officer, so that process cannot be served upon him or her.

3. Where the debtor has departed from this State with the intention of having his or her effects removed from this State.

4. Where the debtor is about to depart from this State with the intention of having his or her effects removed from this State.

5. Where the debtor is about to remove his or her property from this State to the injury of such creditor.

6. Where the debtor has within 2 years preceding the filing of the affidavit required, fraudulently conveyed or assigned his or her effects, or a part thereof, so as to hinder or delay his or her creditors.

7. Where the debtor has, within 2 years prior to the filing of such affidavit, fraudulently concealed or disposed of his or her property so as to hinder or delay his or her creditors.

8. Where the debtor is about fraudulently to conceal, assign, or otherwise dispose of his or her property or effects, so as to hinder or delay his or her creditors.

9. Where the debt sued for was fraudulently contracted on the part of the debtor. The statements of the debtor, his or her agent or attorney, which constitute the fraud, shall have been reduced to writing, and his or her signature attached thereto, by himself or herself, agent or attorney." Ill. Rev. Stat. 1985, ch. 110, par. 4—101.

In *Lewis v. West Side Trust & Savings Bank* (1937), 288 Ill. App. 271, 278, it was stated:

"[T]here is no such thing as equitable attachment in this State and the theory of taking away the control of a person's property by means of an injunction for the purpose of anticipating a judgment which may or may not thereafter be obtained by a litigant is abhorrent to the principles of equitable jurisdiction."

(See also *Exchange National Bank v. Harris* (1984), 126 Ill. App. 3d 382, 386; *American Re-Insurance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316, 325.) However, where the funds which are the subject of the injunction are also the subject of the dispute, the use of an injunction restraining control is valid. See 73 Ill. App. 3d at 325.

■■ In the instant case, the order did not identify specific funds

to be deposited in escrow. It therefore cannot be said that the funds which were ordered deposited were related to the case. Consequently, defendants' argument that an injunction was proper because it related to specific funds is without merit. Moreover, the motion for the preliminary injunction did not specify one of the enumerated reasons in section 4—101 for issuing an attachment. Consequently, we find that the order of January 25, 1988, was a *de facto* attachment and was thus invalid because it was not entered pursuant to any of the reasons enumerated in section 4—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 4—101). We therefore reverse the trial court's order of January 25, 1988. Even if we did not find the order to be a prejudgment attachment, we would be compelled to reverse given plaintiffs' remaining contentions.

Plaintiffs contend that the injunction was improper due to the fact that defendants failed to show that there was an inadequate remedy at law. We agree.

■■ Generally, where the only purpose of the injunction is to provide monetary relief, there is an adequate remedy at law, and an injunction should not be entered. (See *Kurle v. Evangelical Hospital Association* (1980), 89 Ill. App. 3d 45, 53.) A preliminary injunction should only be granted where money damages cannot adequately compensate the party moving for the injunction or where damages cannot be measured with reasonable certainty. (*Delcon Group, Inc. v. Northern Trust Corp.* (1987), 159 Ill. App. 3d 275, 280.) In arguing that the injunction was proper, defendants cite *K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021, wherein this court stated:

> "The existence of a remedy at law does not deprive equity of its power to grant injunctive relief unless the remedy is adequate; *i.e.*, the remedy at law must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. [Citations.] Thus, the fact that plaintiff's ultimate relief may be a money judgment does not deprive a court of equity the power to grant a preliminary injunction."

In *K.F.K.*, this court found that if the injunction in that case had not been granted, the rights of the plaintiff under the contract could have been extinguished and that the plaintiff would thereby have been irreparably harmed. (31 Ill. App. 3d at 1021.) The court therefore reasoned that the trial court did not abuse its discretion in entering a preliminary injunction. 31 Ill. App. 3d at 1021.

■■ In the instant case, the injunction that was entered specifi-

cally related to money. It is clear that the ultimate goal of defendants is to receive a sum of money for their interest in the partnership. Unlike *K.F.K.*, the court's failure to enter an injunction could not have affected defendants' rights. Therefore defendants had an adequate legal remedy, and entry of an injunction was thus improper.

■■ We also agree with plaintiffs' contention that the injunction must be reversed because it was imprecise and overly broad.

Section 11—101 of the Code of Civil Procedure provides in pertinent part:

> "Every order granting an injunction and every restraining order shall set forth the reasons for its entry; shall be specific in terms; shall describe in reasonable detail *** the act or acts sought to be restrained ***." (Ill. Rev. Stat. 1985, ch. 110, par. 11—101.)

This requires that an injunction be definite, clear, and precise in its terms such that there can be no excuse or reason for failing to comprehend or obey its directions. *Streif v. Bovinette* (1980), 88 Ill. App. 3d 1079, 1085.

■■ In the instant case, the order of January 25, 1988, provided that "an injunction be entered instanter requiring the Plaintiffs to deposit in escrow in one account or several accounts the aggregate sum of $1,249,000 Dollars." It did not, however, state which plaintiffs were to contribute what amounts. We find that this was a fatal defect.

For the foregoing reasons, the trial court's order of January 25, 1988, is reversed.

Reversed.

LINDBERG, P.J., and DUNN, J., concur.