AMERICAN RE-INSURANCE COMPANY, Plaintiff-Appellee, *v.* MGIC INVESTMENT CORPORATION, Defendant.—(COMMERCIAL LOAN INSURANCE CORPORATION *et al.*, Defendants-Appellants.)

First District (5th Division)   Nos. 78-237, 78-271 cons.

Opinion filed June 8, 1979.

R. R. McMahan, of Lord, Bissell & Brook, of Chicago, for appellants.

Phelan and Pope, of Chicago (Richard J. Phelan, Michael A. Pope, and John M. Christian, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendants filed these consolidated interlocutory appeals from orders denying their motions to: (1) stay all court proceedings against them pending completion of arbitration proceedings ordered by the Supreme Court of the State of New York, and (2) vacate the orders allowing plaintiff to deposit certain funds in an interest bearing account with a court approved trustee. On appeal, defendants contend that the denial of their motions was erroneous and should be reversed.

The following facts, appearing in the record, are pertinent to the disposition of this appeal.

On September 14, 1970, plaintiff and defendants entered into a re-insurance agreement or "treaty." This agreement essentially provided that in return for defendants' payment of 21.55 percent of the premiums on their lease guarantee insurance policies, plaintiff would re-insure defendants for 80 percent of the amount of their losses under those policies. The agreement also contained an arbitration clause. This clause provided that "any irreconcilable dispute" which arose between plaintiff and defendants in connection with the agreement would be submitted to a "Board of Arbitration." The makeup of the arbitration board, procedure for its selection, filing time requirements and other details were specified. Also specified was that "[a]ny arbitration shall take place in the City of New York, New York, unless otherwise mutually agreed." Although the agreement, including the arbitration clause, was subsequently amended on several occasions, the arbitration requirement described above was in all material respects retained.

On March 9, 1977, plaintiff filed a complaint against defendant MGIC Investment Corporation (MGIC) and against defendants who were allegedly "wholly-owned subsidiaries" of MGIC. Plaintiff stated in the complaint that defendants were "conditionally necessary parties to this action, in order to render the relief sought herein, i.e., rescission of the [re-insurance] treaty, complete and effective." Counts I and III of the complaint alleged that MGIC caused defendants to "advance its own independent financial interests" by "[g]enerally giving preferential treatment to valued clients of MGIC even when such treatment was adverse to the best interests" of both defendants and plaintiff. These counts specifically alleged that MGIC induced defendants to reject sound underwriting and insurance claim practices in order to issue policies and pay questionable, unwarranted or uncovered claims, solely because the policy holders or beneficiaries were valued customers of MGIC. Count II of the complaint alleged that MGIC breached and induced defendants to breach certain representations of fact upon which plaintiff relied. Based on the above allegations and the resulting losses which allegedly occurred, plaintiff requested in each count of its complaint that the re-insurance treaty between it and defendants be rescinded, that damages be assessed against MGIC, and that other appropriate relief be entered. Simultaneous with the filing of this complaint, plaintiff filed an "emergency motion for deposit of funds," which sought permission to deposit with the court certain funds claimed by defendants as due and owing under the terms of the re-insurance treaty. That same day, the trial court issued an *ex parte* order allowing plaintiff to deposit $739,429.46 in an interest-bearing account with an approved trustee. The order provided

that this deposit would not be treated as an admission by plaintiff of its liability to defendants or of the validity of the re-insurance treaty, and that defendants were not to treat plaintiff's failure to pay the deposited funds to them as a default or violation under the treaty. During the course of the subsequent proceedings, pursuant to court orders, plaintiff deposited with the same trustee additional funds apparently due to defendants under the re-insurance agreement, as well as funds paid to it under the agreement by defendants. On February 1, 1978, it was ordered by the court pursuant to the stipulation of the parties that plaintiff continue to make periodic deposits in accordance with the terms of the March 9, 1977, order, pending the outcome of this appeal.

On April 7, 1977, MGIC filed a petition for removal of the action to the United States District Court for the Northern District of Illinois, alleging that there was diversity of citizenship and that the claims asserted against MGIC were separate and independent from the claims asserted against defendants. On the same day in New York, defendants served a notice and demand for arbitration on plaintiff, and filed in the New York State Supreme Court a petition to compel arbitration. Subsequently, in Federal court, MGIC moved to quash the service of summons and dismiss the complaint, while defendants asked the court to stay the action pending the outcome of arbitration in New York. Plaintiff responded by filing a motion in Federal court to remand the action to the Circuit Court of Cook County, and also filing motions in the Federal and New York courts asking for stays of any arbitration. Defendants countered with a motion in the New York court to issue a preliminary injunction enjoining plaintiff from proceeding with their action in any other jurisdiction. On May 20, 1977, while the motions in Federal court were pending, a memorandum decision on the motions filed in New York was issued by Justice Nathaniel T. Helman of the New York Supreme Court. This decision granted defendants' motion to compel arbitration, denied plaintiff's motion to stay arbitration, and denied defendants' motion for a preliminary injunction enjoining plaintiff from proceeding with its action, which was still pending in Federal court. Plaintiff and defendants appealed from the portions of the judgment which denied their motions, and the New York Supreme Court's appellate division unanimously ordered the judgment affirmed. Plaintiff's motion for appeal to the New York Court of Appeals was subsequently denied.

In a memorandum opinion issued on September 20, 1977, Judge Herbert L. Will of the United States District Court found that there was not complete diversity of citizenship, that plaintiff's complaint did not state separate and independent claims, and that the action would accordingly be remanded to the Circuit Court of Cook County. Defendants filed motions in that court on November 14 and December 1,

respectively, to dismiss or alternatively stay the action pending completion of the arbitration proceedings in New York, and to vacate the March 9 order and all subsequent orders incident thereto which allowed plaintiff to deposit funds with the court approved trustee. Following a hearing and argument, the court denied defendants' motions, and they filed their notice of interlocutory appeal. Pursuant to the stipulation of the parties, it was ordered and agreed that except for certain discovery matters and future deposits of funds, the proceedings in New York and in the trial court would be stayed pending the outcome of this appeal.

Opinion

Defendants first contend that by denying their motion to stay the action pending completion of the arbitration proceedings in New York, the trial court improperly failed to give "full faith and credit" to a final judgment of a court of a sister State. The full faith and credit clause of the Constitution (U.S. Const., art. IV, §1) as implemented by statute (28 U.S.C. §1738 (1976)) requires that judicial proceedings shall have the same full faith and credit in all courts as they have in the courts of the State from which they are taken. Defendants assert and plaintiff agrees that under New York law an order compelling arbitration entered upon proper jurisdiction, is a final, reviewable judgment (*Marchant v. Mead-Morrison Manufacturing Co.* (1929), 252 N.Y. 284, 169 N.E. 386), which is therefore entitled to full faith and credit in Illinois. (See *People v. Western Tire Auto Stores, Inc.* (1965), 32 Ill. 2d 527, 207 N.E.2d 474.) Defendants submit that in order to give full faith and credit to the New York judgment compelling plaintiff and defendants to arbitration, the trial court was required to stay its own proceedings on plaintiff's action.

■■ ■ The New York order referred to did grant defendants' motion to compel arbitration. However, it also denied defendants' application for a preliminary injunction to prevent plaintiff from continuing with its action. It has been repeatedly held that even where another State does enjoin litigants from proceeding with a previously instituted Illinois action, neither the full faith and credit clause nor rules of comity compel Illinois courts to recognize such an injunction and abate or preclude their disposition of the pending case. (See, *e.g., James v. Grand Trunk Western R.R. Co.* (1958), 14 Ill. 2d 356, 152 N.E.2d 858, *cert. denied* (1958), 358 U.S. 915, 3 L. Ed. 2d 239, 79 S. Ct. 288; *Kleinschmidt v. Kleinschmidt* (1951), 343 Ill. App. 539, 99 N.E.2d 623.) In this case, however, the New York order, affirmed there on appeal, specifically declined to enjoin the Illinois proceedings. The United States Supreme Court has explained that the full faith and credit which must be given to a foreign judgment is only the credit it would be accorded in the State which rendered it. (See *Durfee v. Duke* (1963), 375 U.S. 106, 11 L. Ed. 2d 186, 84 S. Ct. 242;

*Morris v. Jones* (1947), 329 U.S. 545, 91 L. Ed. 488, 67 S. Ct. 451.) It therefore appears that in ruling on defendants' motion to stay the proceedings below, the trial court correctly noted:

> "The defendants here have argued that this Court must give full faith and credit to the New York court's judgment directing the parties to arbitration in New York. This Court has not and does not intend to, in any fashion, interfere with that order.
>
> ❋ ❋ ❋
>
> But, meanwhile, the effect of their [New York] judgment is not to stay these proceedings."

Defendants argue that the New York court was "influenced" against granting an injunction because the action was at that time pending in Federal court, and a State court cannot properly enjoin parties from proceeding with a Federal court action. (See *Donovan v. City of Dallas* (1964), 377 U.S. 08, 12 L. Ed. 2d 409, 84 S. Ct. 1579.) It is true, as defendants emphasize, that the New York order referred to the rule against enjoining Federal court proceedings, and specifically referred to those proceedings when it denied defendants' motion. We note, however, that defendants' motion had prayed that plaintiff be enjoined from continuing "any action which has or may be commenced." The New York court itself, prior to ruling on the motion, characterized it as seeking "to enjoin and restrain [plaintiff] ❋ ❋ ❋ from proceeding with their [*sic*] action in Illinois, and from commencing any other action or proceeding in any other Court ❋ ❋ ❋." In light of this characterization and the principle that the issues in a case are created by the pleadings (*People ex rel. Henderson v. Redfern* (1966), 75 Ill. App. 2d 196, 220 N.E.2d 323), it is clear that in denying defendants' motion, the New York court was declining to issue an injunction against proceedings in either the State or Federal court in Illinois. We further note that when the New York order was appealed, it was pointed out that the Federal court had ruled on MGIC's petition for removal, and had remanded the action back to the circuit court where it had originally been filed. The appellate court there nevertheless affirmed the lower court's order. In light of the above, it appears that the trial court, by refusing to stay its own proceedings, did not fail to give full faith and credit to the New York order.

■■■ Defendants nevertheless argue that the "only meaningful way to give full faith and credit" to the New York judgment is to require that a stay be imposed below. They point to the portions of plaintiff's complaint which allege that MGIC caused defendants to breach certain of their duties under the agreement, and state that the allegations in plaintiff's complaint "could not be adjudicated without first deciding issues that the New York courts have ruled must be decided by arbitration." Defendants therefore argue that the action in the trial court should not proceed until

the arbitration in New York is completed. We reject this argument. As we indicated above, in spite of what defendants assert would be "meaningful," the trial court was certainly not required by full faith and credit to go further in staying its own proceedings than the New York order required. It is noteworthy that in refusing to enjoin the Illinois proceedings, the New York court examined plaintiff's complaint and found:

> "[T]he complaint in the Illinois proceeding, based as it is on charges that the parent [MGIC] * * * so manipulated their [*sic*] wholly owned subsidiaries as to cause of [*sic*] breach of the fiduciary owned plaintiff as reinsurer, demonstrates that the issues involved in the two proceedings are not identical. It cannot be said that they fall clearly within the scope of the Arbitration Clause."

A review of plaintiff's complaint and the re-insurance agreement supports the New York court's conclusion. Moreover, the policy in Illinois against the enjoining of judicial proceedings is reflected in the rule that an injunction will not be issued simply because, after jurisdiction over the parties is obtained, one party attempts to prosecute an action against another in a foreign State. Preventing a party from prosecuting its action is an extraordinary remedy, to be used only when the pursuit of the action will result in fraud, gross wrong or oppression, or harassing and vexatious litigation. *Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.* (1978), 59 Ill. App. 3d 206, 376 N.E.2d 1.

> "[T]he court will not restrain the prosecution of a suit in a foreign jurisdiction unless a clear equity is presented requiring the interposition of the court to prevent a manifest wrong and injustice. It is not enough that there may be reason to anticipate a difference of opinion between the two courts, and that the courts of the foreign State would arrive at a judgment different from the decisions of the courts in the State of the residence of the parties. [Citation.] It is not inequitable for a party to prosecute a legal demand against another in any forum that will take legal jurisdiction of the case, merely because that forum will afford him a better remedy than that of his domicile. To justify equitable interposition it must be made to appear that an equitable right will otherwise be denied the party seeking relief." (*Royal League v. Kavanagh* (1908), 233 Ill. 175, 183, 84 N.E. 178, 181.)

Similarly, the United States Supreme Court has ruled that where there is proper jurisdiction, a party's bringing of a second action in a foreign jurisdiction "does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the

proceedings in the other court."(*Kline v. Burke Construction Co.* (1922), 260 U.S. 226, 230, 67 L. Ed. 226, 230, 43 S. Ct. 79, 81, quoted in *Chicago, Rock Island, & Pacific Ry. Co. v. Schendel* (1926), 270 U.S. 611, 615-16, 70 L. Ed. 757, 762, 46 S. Ct. 420, 422.) As we have explained, plaintiff's action was properly commenced in the court below with the filing of its complaint against MGIC. Defendants subsequently obtained a New York order compelling arbitration with plaintiff under their agreement. We conclude, however, that neither the full faith and credit rule nor the "sensible considerations of judicial economy" defendants cite now compel the trial court to relinquish its jurisdiction, or enjoin or stay its own proceedings. We are also compelled to note defendants's argument that certain of the trial court's remarks indicate that its refusal to stay its proceedings was in effect a "sanction" improperly imposed on them for seeking arbitration in New York. It is true that after denying defendants' motion to stay the proceedings, the court addressed itself to a motion filed by plaintiff for sanctions against defendants. Whether the question of sanctions, which is not before us on appeal, affected the court's decision to stay its proceedings is highly speculative. This is especially true because of the court's remarks, quoted above, that defendants' motion would be denied because the effect of the New York order was not to stay the Illinois proceedings. We note, moreover, that if a trial judge's decision was correct, the reasons assigned for it are immaterial. (*Hall v. Humphrey-Lake Corp.* (1975), 29 Ill. App. 3d 956, 331 N.E.2d 365.) As we indicated above, it appears that the trial court correctly construed the New York order and concluded that the full faith and credit requirement did not require a stay on its proceedings. Accordingly, defendants' motion for a stay was properly denied.

Defendants next contend that the trial court's denial of their motion to vacate the deposit orders entered during the course of the proceedings was erroneous. The original deposit order was issued *ex parte* on March 9, 1977, pursuant to the emergency motion which plaintiff had filed that day with its complaint. The order allowed plaintiff to deposit, in an interest-bearing account with an approved trustee, funds claimed by defendants as owed to them under the re-insurance treaty. It also provided that the deposit of these funds was not to be considered a default, or as an admission by plaintiff of the validity of the treaty or of its liability to defendants. Under these same terms subsequent orders were issued allowing plaintiff to deposit funds which came due to defendants under the treaty, and which defendants paid to plaintiff according to the treaty's terms. Defendants argue that the entry of these orders exceeded the limits of the court's equitable powers.

■■ ■ Initially, we reject plaintiff's contention that we do not have the necessary jurisdiction to hear this appeal. Plaintiff first argues that

although defendants' appeal is brought as an interlocutory appeal as of right under Supreme Court Rule 307(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 307(a)), the deposit orders described above are not the type of orders specifically listed as "prescribed" by that rule. The types of orders listed there include, *inter alia*, orders granting or refusing to dissolve an injunction, appointing or refusing to appoint a receiver or sequestrator, and giving or refusing to give additional property to a receiver or sequestrator already appointed. The purpose of Rule 307 is to permit the interlocutory review of a court's equitable discretion to prevent its abuse (*Bohomolec v. Gieblewicz* (1971), 3 Ill. App. 3d 16, 278 N.E.2d 202), and courts will look to the substance rather than the form of the order to determine its appealability. (*First National Bank v. Powers* (1969), 107 Ill. App. 2d 470, 246 N.E.2d 838.) We conclude that the establishment of the fund and its "trustee," the approval of the original and subsequent payments to the fund, and the order that the payments were not to be interpreted as a breach are in nature and substance the types of orders contemplated as appealable by Supreme Court Rule 307(a). Plaintiff next argues that this appeal was "not timely perfected" because the motion to vacate, and the appeal from the denial of that motion, were filed some nine months after the original March 9 deposit order was entered. During the time, as we explained above, the cause was pursued in the Federal and New York forums. Plaintiff concedes that the March 9 order was *ex parte*, entered solely on its motion and without notice to defendants. This appeal is brought from the denial of the motion to vacate that order and the other deposit orders entered incident thereto. Supreme Court Rule 307(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 307(b)) does not set out time limits within which an *ex parte* order must be challenged. The rule does provide that a motion to vacate the order must first be filed with the trial court, and that an appeal must be taken from the denial of the motion within 30 days. In filing their motion to vacate and their appeal from the denial of that motion, defendants complied with these requirements. On that basis and also in consideration of the fact that the delay does not appear to have been harmful or the result of an unreasonable lack of diligence, we cannot agree that defendants' appeal should not be heard. Finally, plaintiff argues that even if the validity of the March 9 order is considered, all subsequent orders were not entered *ex parte*, were not separately appealed from, and should not be considered. Defendants assert, however, that all of the orders were "based entirely in the original deposit order." Having reviewed the record we agree that the subsequent orders were all entered pursuant to the original March 9 order, and that our decision should apply to all of the orders that were so entered.

■■■ Although there is precedent for the deposit of funds with the court pending the outcome of litigation (see, *e.g., Beach v. Boettcher* (1944),

323 Ill. App. 79, 55 N.E.2d 104), we agree with the parties to this appeal that there is apparently no precedent in Illinois for the deposit of funds under the exact circumstances of this case. It is clear, however, that it is unnecessary to have a precedent for equitable relief before it will be granted. (*Johnson v. Johnson* (1973), 11 Ill. App. 3d 681, 297 N.E.2d 285.) The mere fact that no precedent can be found in which the requested relief has been granted under a similar state of facts "is no reason for a court of chancery to shrink from action." (*County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623, 630, 344 N.E.2d 540, 547.) Defendants argue that the deposit orders should be reversed because they are in effect an "equitable attachment." They additionally argue that the orders cannot stand in light of *De Beers Consolidated Mines, Ltd. v. United States* (1944), 325 U.S. 212, 89 L. Ed. 1566, 65 S. Ct. 1130. We disagree. In *De Beers* the United States Supreme Court reversed an injunction, granted on the United States' motion, restraining defendants from withdrawing, selling, transferring, or disposing of any property belonging to them in the United States. The court found that this order dealt with matters wholly outside the issues in the case, dealt with property which could not under any circumstances be dealt with in the court's final order, and was therefore entered without proper jurisdiction or authority. The deposit orders at issue herein do not resemble the *De Beers* injunction in substance or scope. They do not deal with funds which are irrelevant to the issues in the case, and do not impose a blanket restriction on defendants' use of their property. Plaintiff seeks rescission of the re-insurance treaty and the recovery of possible losses thereunder. The funds covered by the deposit orders are the amounts due from plaintiff to defendants and those paid by defendants to plaintiff. They are clearly subject to disposition by the court as part of its final order. Similarly, the orders do not amount to an "equitable attachment." The use of this procedure, whereby a creditor seeks to restrain a debtor's control over property in its possession and thereby enforce by attachment a purely equitable claim that is not reduced to judgment, has been rejected in Illinois. (See *Dunham v. Kauffman* (1943), 385 Ill. 79, 52 N.E.2d 143.) As we indicated, however, the fund at issue is composed of monies whose past and future payment under the re-insurance treaty is in dispute, and whose disposition will be dealt with in the trial court's final order. We cannot agree that by taking steps to insure that the monies are preserved until that final ruling, the court abused the exercise of its equitable discretion. Additionally, we reject defendants' final argument that the *ex parte* deposit order denied them their constitutional right to due process of law. An *ex parte* order, which is clearly within the power of the court to enter, is by definition an order originally granted at the instance and for the benefit of one party, without notice to or contestation by any person

adversely interested. (*Kimbrough v. Parker* (1948), 336 Ill. App. 124, 83 N.E.2d 42.) As we explained above, Supreme Court Rule 307(b) requires that before an appeal of an *ex parte* order is taken, a motion to vacate the order must be filed with the trial court. The purpose of this rule is to prevent appeals from orders entered upon a partial and one-sided consideration, and to allow the court the opportunity to rectify any mistakes which may have been made due to the *ex parte* character of the order. (See *Stella v. Mosele* (1939), 299 Ill. App. 53, 19 N.E.2d 433.) Defendants apparently received notice of the March 9, 1977, deposit order one day after it was entered and, for whatever reason, did not move to vacate that order until December, almost nine months after it was issued. A full hearing was then held, their motion was considered and denied, and they brought this appeal. In light of the above, we cannot agree that their constitutional rights to due process were denied.

Based on the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.