LEONE GRAIN AND SUPPLY, INC., Plaintiff-Appellee, v. RICHARD BOERS, Defendant (Barry J. Lauwers *et al.*, Defendants-Appellants).

Third District   No. 3—93—0113

Opinion filed September 29, 1993.

Watts C. Johnson, of Johnson, Martin, Russell, English, Scoma & Beneke, of Princeton (Scott Madson, of counsel), for appellants.

Herbolsheimer, Lannon, Henson, Duncan & Reagan, of La Salle (R.J. Lannon, Jr., of counsel), for appellee.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

Plaintiff, Leone Grain and Supply, Inc., filed a complaint against defendant, Richard Boers (Boers), asserting a lien on one-half of a crop grown in 1986 on land leased by Boers. An order was subsequently entered which stated that, by agreement of the parties, 50% of the proceeds from the sale of the 1986 crop would be held until a hearing on the merits. Barry J. Lauwers, Janice P. Lauwers, Charles H. Peterson and Susan M. Peterson (intervenors) later filed a petition to intervene in the action. They alleged that they leased the farmland in 1986 and Boers had no interest in the 1986 crop. Following a bench trial, the court ruled in favor of the intervenors but denied their request for attorney fees. The intervenors filed a timely notice of appeal.

The sole issue on appeal is whether the trial court erred in denying the intervenors' request for an award of attorney fees. Because we conclude that the intervenors have not established any statutory basis for an award of attorney fees, we affirm.

On September 25, 1986, plaintiff filed its complaint against Boers. It alleged that Boers owed plaintiff $43,415.84 for agricultural products Boers purchased from plaintiff and for cash advances from plaintiff to Boers. Plaintiff also alleged that Boers had signed a security agreement on January 17, 1986. In this agreement, Boers pledged as collateral for the debt all crops growing on certain real estate. Plaintiff filed a financing statement to perfect its interest in the collateral. Copies of these documents were attached to the complaint. Plaintiff sought replevin of the collateral and a judgment for damages. Plaintiff also filed a petition for the appointment of a receiver, alleging that "the collateral property is susceptible to commingling with other property of a like kind and nature."

On October 9, 1986, a hearing was held regarding plaintiff's petition for the appointment of a receiver. Boers appeared *pro se*. Barry J. Lauwers also appeared without an attorney and testified on Boers' behalf. Lauwers stated that Boers had been a tenant farmer on the same land for 15 years under a lease agreement. The land was held in a trust known as the Sherrard Trust and was managed by a trustee. Under the lease agreement entered into by Boers and the trustee, Boers received 50% of the crops raised on the property. Lauwers and the other intervenors were beneficiaries of the trust. Around February 1986, Lauwers and the other intervenors had Boers surrender his lease. They then leased the property from the trustee and entered into an agreement with Boers. Under the terms of the agreement between Boers and the intervenors, Boers was to continue to farm the land as a hired hand. Boers received a salary of $800 a month and did not have an interest in the crop raised on the property. The intervenors also agreed to purchase Boers' farm equipment. In exchange for the equipment, they obtained a loan from the trust to pay off all of Boers' debts, with the exception of his debt to the plaintiff.

After hearing this testimony and the arguments of the parties, the court stated that it would order the appointment of a receiver. The court concluded that a receiver was necessary to preserve one-half of the proceeds from the 1986 crop in the event plaintiff prevailed in the litigation. Lauwers objected to the appointment of a receiver, arguing that Boers did not have any interest in the crop. The court then suggested that, as an alternative to incurring the expenses involved in appointing a receiver, Lauwers could agree to escrow the proceeds of one-half of the 1986 crop. The court specifically informed Lauwers that because he was not a party to the action, the court could not order him to do anything. However, the court indicated that such an order could be entered by agreement.

The day of the hearing, an order was entered which stated "by agreement of the parties 50% of the crop being grown on the Real Estate owned by the 'Sherrard Trust' or the proceeds will be held until a hearing on the merits." The order also stated that 50% of the crop was to be delivered to the Ladd elevator and, if sold, the proceeds were to be deposited with the clerk of the circuit court. This order was prepared by plaintiff's counsel, initialed by Boers, and signed by Lauwers.

On February 19, 1987, an order was entered which granted plaintiff's motion for default judgment. Judgment was entered in favor of plaintiff and against Boers in the amount of $43,415.84. The record shows that Boers subsequently filed for bankruptcy. We note that Boers is not a party to this appeal.

On March 30, 1987, the intervenors filed their petition to intervene in the action. In their petition, the intervenors alleged that they were entitled to the crop proceeds because Boers had no interest in the crop. They also requested damages for the wrongful taking and detention of the crop proceeds. On May 25, 1987, the proceeds from the sale of one-half of the 1986 soybean crop were deposited with the court. The amount of the deposit was $9,903.72.

A bench trial was held on December 17 and 18, 1991. After lengthy briefs were filed by the parties, the court issued a written opinion and order on November 12, 1992. The court found that the plaintiff was not entitled to replevin the 1986 crop because Boers had no interest in the crop. It further found that the intervenors were not entitled to an award of attorney fees based upon the wrongful taking of the crop because the proceeds were deposited with the court by agreement of the parties. After their motion for reconsideration was denied, the intervenors filed a timely notice of appeal.

The intervenors argue the trial court erred in denying their request for attorney fees based on the court's conclusion that the October 9, 1986, order (deposit order) was entered by agreement. The intervenors contend the order was "coerced" by the trial court's statement that it would order the appointment of a receiver. Consequently, the intervenors assert that the order must be considered an order appointing a receiver. In the alternative, they argue that the order could be considered an equitable, prejudgment attachment. Thus, the intervenors contend they are entitled to attorney fees either as a result of the erroneous appointment of a receiver or based upon a wrongful attachment order. We disagree with both arguments.

■ There is no common-law principle which allows the award of attorney fees either as costs or damages. (*State Farm Fire & Casu-*

*alty Co. v. Miller Electric Co.* (1992), 231 Ill. App. 3d 355, 359, 596 N.E.2d 169, 171.) Illinois follows the prevailing rule in the United States with respect to awards of attorney fees. (*Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 488, 426 N.E.2d 1204, 1206.) The rule followed by most States is often referred to as the "American rule." (*Baksinski v. Northwestern University* (1992), 231 Ill. App. 3d 7, 12, 595 N.E.2d 1106, 1109.) This rule provides that, in the absence of a statute or an agreement, a successful litigant in a civil action may not recover attorney fees or the ordinary expenses of litigation from his adversary. (*Saltiel*, 85 Ill. 2d at 488, 426 N.E.2d at 1206; *Fischer v. Brombolich* (1993), 246 Ill. App. 3d 660, 663, 616 N.E.2d 743, 745.) In this appeal, no claim has been made that there was an agreement between the parties concerning attorney fees. Also, we note that the intervenors have not cited any statutory provision which would support their claim for attorney fees.

The intervenors base their claim for attorney fees on the assertion that the trial court's order should be considered either an order appointing a receiver or an attachment order. However, the record shows that the trial court's deposit order did not order an attachment or the appointment of a receiver. Instead, the order provided, by agreement of the parties, that the proceeds of the sale of one-half of the 1986 crop would be deposited with the court. A trial court may properly order the deposit of funds with the court pending the outcome of the litigation where the funds which are the subject of the order are also the subject of the dispute. (*Allstate Insurance Co. v. Rizzi* (1993), 252 Ill. App. 3d 133; *American Re-Insurance Co. v. M G I C Investment Corp.* (1979), 73 Ill. App. 3d 316, 324-25, 391 N.E.2d 532, 539.) Such an order is properly entered when the parties to the litigation agree to deposit funds in an escrow account. (*Computer Teaching Corp. v. Courseware Applications, Inc.* (1989), 191 Ill. App. 3d 203, 206, 547 N.E.2d 718, 720-21.) This type of agreed order is to be encouraged as "[i]t accrues to the benefit of both the litigants and the court when an amicable arrangement for the safeguarding of disputed funds is created." *Computer Teaching Corp.*, 191 Ill. App. 3d at 206, 547 N.E.2d at 721.

After reviewing applicable case law, we conclude that the intervenors' claim of attorney fees has no merit. The intervenors rely on *Fox v. Fox Valley Trotting Club* (1953), 349 Ill. App. 132, 110 N.E.2d 84, in support of their argument that the order may be considered an order appointing a receiver. *Fox* is distinguishable, however.

In *Fox*, the trial court ordered the defendant to file a surety bond of $75,000 within five days "in lieu of the appointment of a receiver."

(*Fox*, 349 Ill. App. at 134.) On appeal, the court determined that the deposit was compelled by the court and was tantamount to the appointment of a receiver. (*Fox*, 349 Ill. App. at 135.) The court then found that the trial court abused its discretion in ordering the appointment of a receiver based on the facts of that case. *Fox*, 349 Ill. App. at 137-39.

■ The circumstances here are entirely different. *Fox* involved an order of the court requiring the defendant to file a surety bond. As previously noted, the deposit order here reflected the parties' agreement to deposit with the court the proceeds of the sale of one-half of the 1986 crop. The court specifically recognized that it could not order any action by Lauwers, who at that time had not yet intervened and was not a party to the action.

We recognize that, under section 2—415(a) of the Code of Civil Procedure, reasonable attorney fees may be awarded where the appointment of a receiver is revoked or set aside. (Ill. Rev. Stat. 1991, ch. 110, par. 2—415(a).) Here, however, a receiver was never appointed. Therefore, no order appointing a receiver was ever revoked or set aside. Based on these facts, the statute clearly does not apply.

We also recognize that courts have held that an attachment debtor has the right to maintain an independent tort action against an attachment creditor for damages incurred as a result of a wrongful attachment. (*Gale v. Transamerica Corp.* (1978), 65 Ill. App. 3d 553, 556-57, 382 N.E.2d 412, 415; *Baird v. Liepelt* (1965), 62 Ill. App. 2d 154, 156-57, 210 N.E.2d 1.) The damages recoverable in such an action include the reasonable attorney fees incurred in setting aside the attachment order. (*Gale*, 65 Ill. App. 3d at 557 n.2, 382 N.E.2d at 415 n.2; *Baird*, 62 Ill. App. 2d at 156-57.) However, this is a narrow exception to the "American rule" regarding attorney fees and only applies to a separate tort action for attorney fees actually incurred in setting aside an attachment. See *Neri v. J.I. Case Co.* (1991), 207 Ill. App. 3d 409, 414, 566 N.E.2d 16, 19-20; *Owens v. New York Life Insurance Co.* (1966), 67 Ill. App. 2d 92, 96, 214 N.E.2d 566.

■ The narrow exception cited above has no application in this appeal. The intervenors contend that the deposit order can be considered an equitable, prejudgment attachment. However, it has specifically been held that a deposit order does not amount to an "equitable attachment." (*American Re-Insurance Co.*, 73 Ill. App. 3d at 325, 391 N.E.2d at 539.) In addition, the instant appeal does not involve a separate tort action seeking damages for a wrongful attachment.

Under the American rule, the intervenors are clearly not entitled to attorney fees based solely on the fact that they prevailed at trial.

Because the intervenors have been unable to cite any specific authority supporting their claim for attorney fees, we conclude that the trial court properly denied their request.

For the reasons indicated, the judgment of the circuit court of Bureau County is affirmed.

Affirmed.

SLATER and LYTTON, JJ., concur.