# Illinois Official Reports

## Appellate Court

---

| | |
|---|---|
| | **Glancy v. Brown, 2021 IL App (3d) 200468** |

---

| | |
|---|---|
| Appellate Court Caption | STEVEN GLANCY; JANE OHAVER; and JANE E. OHAVER, P.C., Plaintiffs-Appellees, v. JOEL BROWN; JOEL E. BROWN & ASSOCIATES, P.C.; and THE LAW OFFICES OF JOEL E. BROWN, a Professional Corporation, Defendants-Appellants. |
| District & No. | Third District No. 3-20-0468 |
| Filed Rehearing denied | July 9, 2021 August 3, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 20-L-183; the Hon. Christopher R. Doscotch, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stephen M. Buck, of Quinn Johnston, of Peoria, for appellants. Christopher P. Ryan, of Law Office of Christopher P. Ryan, P.C., of Peoria, for appellees. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion. Justices Daugherity and Lytton concurred in the judgment and opinion. |

**OPINION**

¶ 1    The plaintiffs, Steven Glancy, Jane Ohaver, and Jane E. Ohaver, P.C., filed a complaint against the defendants, Joel Brown, Joel E. Brown & Associates, P.C., and The Law Offices of Joel E. Brown[1] (collectively, Brown), seeking to enforce an alleged attorney fee-sharing agreement related to the prosecution of a personal injury and wrongful death action in Missouri. The trial court granted the plaintiffs a preliminary injunction, ordering Brown to hold 50% of the attorney fees in trust or escrow pending the disposition of the matter on the merits. Brown appealed.

¶ 2                                    I. BACKGROUND

¶ 3    The plaintiffs' complaint alleged breach of contract, breach of fiduciary duty, and tortious interference with contract in conjunction with an attorney fee-sharing contract in a personal injury and wrongful death action that was filed in Missouri. As alleged in the complaint, Donny Lee Schroeder was seriously injured in an automobile accident that occurred on July 23, 2014. Donny's parents and brother were killed in the accident. Kelley Schroeder, Donny's aunt, was appointed the executrix of the deceaseds' estates and the guardian of Donny. Kelley, who was looking for legal representation for potential personal injury and wrongful death actions, contacted Ohaver on the recommendation of the life insurance representative, and Ohaver recommended Glancy and Brown. Kelley met jointly with Glancy and Brown. A "Contract for Employment of Attorney" was signed on August 22, 2014, by Kelley as the executrix of the deceaseds' estates and as the next friend and guardian of Donny, with Joel E. Brown & Associates, P.C., listed as the attorney. Paragraph three of the contract provided that the attorney was entitled to 33⅓% of the gross settlement or judgment. Paragraph six of the contract provided:

> "Client is advised and consents to a referral fee, deducted from Attorney's fee as described above, payable to attorneys Steven Glancy and Jane Ohaver. Client authorizes Attorney to retain Steven Glancy as co-counsel and to assist in the representation of Client. The combined referral and co-counsel fee shall be 50% of the fees described in paragraph 3 and will not increase any fees or costs payable by Client as set forth above in paragraphs 3 and 4. Steven Glancy and Joel Brown are jointly responsible for the case."

¶ 4    The complaint further alleges that in 2016, Brown contacted Kelley regarding local Missouri counsel, and Brown also reported to Kelley some alleged misconduct by Glancy. That alleged misconduct included substance abuse issues and not performing professionally at the office. On March 24, 2016, Brown cancelled the August 22, 2014, contract, a decision that was allegedly retroactively approved by Kelley. On March 28, 2016, Kelley signed a new "Contract for Employment of Attorney." The contract was essentially the same as the prior contract, except paragraph six, which now provided:

> "Client is advised, authorizes and consents to a referral fee, deducted from Attorney's fee as described above, payable to attorney Jane Ohaver, in an amount to be determined at the conclusion of the matter. Further, Client is advised, authorizes and consents to

---

[1]The plaintiffs' complaint was amended by court order dated August 11, 2020, to add The Law Offices of Joel E. Brown as a defendant.

Joel E. Brown to retain local counsel to serve in this matter. The fees for retaining local counsel shall not increase the fees that may be payable under paragraph 3 above, and the fees for local counsel may be a percentage of the attorney fees described in paragraph 3 above, or may be paid by Joel E. Brown to local counsel on an hourly basis. In no event shall the total combined attorney fees, referral fees or local counsel fees exceed one-third of the gross recovery or settlement as described in paragraph 3 above."

¶ 5    Then, after Donny's eighteenth birthday, on September 30, 2017, Brown had Donny execute the contract in his own capacity. The September contract contained the same terms, except it stated that it was an addendum to and in addition to the March 28, 2016, contract.

¶ 6    The complaint alleges that the underlying wrongful death action settled in Missouri and the settlement was approved on July 9, 2020. It is alleged that the settlement, along with an earlier settlement, were in the amount of $21 million, putting approximately $6.9 million in attorney fees at issue. Brown contended that he did not owe any fees to Glancy or Ohaver; in response, Glancy and Ohaver brought the instant suit. In addition to the complaint, the plaintiffs filed a petition for preliminary injunctive relief and a petition for an emergency temporary restraining order (TRO), the latter pursuant to section 11-101 of the Code of Civil Procedure (Code) (735 ILCS 5/11-101 (West 2018)). The trial court initially granted the TRO without notice on August 3, 2020. Brown filed a motion to dissolve the TRO and filed an opposition brief to the petition for preliminary injunctive relief; a hearing date was set for September 18, 2020. Brown did not answer the complaint, but, on August 25, 2020, filed a motion to dismiss the complaint pursuant to sections 2-613 and 2-619.1 of the Code (*id.* §§ 2-613, 2-619.1).

¶ 7    At the hearing on the motion to dissolve the TRO and to grant the preliminary injunction, Brown argued that his motion to dismiss should be decided first. As the trial court noted in its order, Brown did not request a continuance of the preliminary injunction hearing to allow for the plaintiffs to respond to the motion to dismiss and for a hearing on the motion to dismiss prior to a hearing on the preliminary injunction. The trial court stated that it was hesitant to leave the TRO in full force and effect without a request for a continuance from Brown. The trial court decided that it would proceed with the injunction hearing and that the plaintiffs should have the opportunity to respond to the motion to dismiss. The trial court found that Brown answered the petition for a preliminary injunction, rather than filing a motion for summary judgment or a motion to strike, so the injunction was at issue and could be decided. The trial court directed Brown to incorporate his arguments regarding dismissal into his argument regarding the elements necessary for preliminary injunctive relief. The motion to dismiss would be addressed later.

¶ 8    At the hearing, Ohaver testified that she was contacted regarding the Schroeder litigation. Ohaver testified that her husband, Glancy, had experience with trucking cases, so she recommended him along with Brown, who was licensed to practice law in Missouri. Ohaver testified that she understood the original August 22, 2014, contract to provide her one-third of the attorney fees as a referring attorney. Ohaver testified that, as the referring attorney, she understood that she had a legal obligation to the client. Between 2014 and 2016, Ohaver worked on other Schroeder legal matters and provided a reference so that Brown could reinstate his Missouri license. Ohaver had no issues with Brown until the spring of 2016. Ohaver denied

that Glancy had any substance abuse problems or personal problems that affected his legal representation.

¶ 9        Glancy testified that he rented office space from Brown and that Glancy and Brown shared legal representation in various cases. Glancy executed the August 22, 2014, contract, along with Brown and Kelley. Glancy testified that he and his wife, Ohaver, were the referring attorneys and that Glancy was also cocounsel with Brown. Glancy testified that between 2014 and March 2016, he did research into jurisdictional issues and reimbursed Brown for half of a $10,000 bill from an expert, but Glancy was going to be responsible for the medical aspect of the litigation. Glancy was not aware of any problems with Brown until he received a copy of an e-mail from Brown to Kelley dated March 20, 2016, that discussed a fee to be paid to local counsel and recounted all of the work that Brown had done on the case to date. Glancy found out in July 2016 that Brown was arguing that Missouri law barred Brown from paying a referral fee.

¶ 10       Kelley testified that she met with Brown and Glancy in their office upon a referral from Ohaver to pursue the wrongful death and personal injury actions. Kelley executed the original attorney fee contract with Brown and Glancy on August 22, 2014. Kelley testified that Brown explained to her that Glancy would be cocounsel and that Ohaver would receive a referral fee, and Glancy and Ohaver's combined portion would be half of the attorney fees. Thereafter, in the spring of 2016, Brown contacted Kelley regarding hiring local counsel in Missouri and regarding a dispute with Glancy about how local counsel would be paid. Kelley testified that Brown told her that Glancy was having drug and alcohol problems that were affecting his work. Brown also told Kelley that Glancy was not doing an equal amount of work on the case. Kelley testified that she terminated Glancy as counsel in the case primarily because of the allegations of drug and alcohol abuse and secondarily because Glancy had not done equal work on the case. Kelley signed the March 28, 2016, contract on the basis that Brown told her that Ohaver would still receive one-third of the attorney fees as a referral fee. At a settlement meeting with Brown and Donny on July 3, 2020, Brown told Kelley that there would be no referral fee paid to Ohaver because it was prohibited by Missouri law.

¶ 11       The trial court dissolved the TRO because the order did not explain why it was entered without notice. In the same order, the trial court granted the plaintiffs' motion for a preliminary injunction. ln ruling on the preliminary injunction, the trial court stated that it considered the verified complaint, attached affidavit of Brown, motion for preliminary injunction, answer to preliminary injunction, Brown's combined motion to dismiss, relevant case law, and the testimony presented. The court rejected Kelley's supplemental affidavit as hearsay but considered her admissible testimony regarding the same. The trial court noted that the settlement funds were in Brown's trust account, and the preliminary injunction required Brown to hold 50% of the attorney fees in trust or escrow pending the resolution of the matter. Brown was not prohibited from distributing the remainder of the settlement, including costs and payment to Missouri counsel. Also, the plaintiffs were required to post a bond. Brown appealed.

¶ 12                                          II. ANALYSIS

¶ 13       As an initial matter, Brown argues that the trial court erred in proceeding with a preliminary injunction hearing when Brown had a pending motion to dismiss that the plaintiffs had not yet

answered and Brown had not filed an answer to the complaint. The plaintiffs argue that an evidentiary hearing was appropriate in this case.

¶ 14    We find no error in the trial court's decision to go forward with the hearing on the motion to dissolve the TRO and the motion for a preliminary injunction to maintain the status quo while the motion to dismiss was pending. As the trial court noted, Brown did not request a continuance of the hearing to allow the plaintiffs time to respond to his motion to dismiss. Also, Brown filed an answer addressing the merits of the motion for a preliminary injunction rather than filing a motion for summary judgment or a motion to strike. The plaintiffs had filed a verified complaint, and a temporary injunction could be issued based solely on the basis of the complaint. See *Carriage Way Apartments v. Pojman*, 172 Ill. App. 3d 827, 835 (1988). Considering that the preliminary injunction was granted, at worst the hearing benefitted Brown by allowing him the opportunity to contradict the verified allegations of the complaint as the trial court determined whether the plaintiffs had met their burden of showing a fair question as to each necessary element. See *id.* at 836 (evidentiary hearing is not required when there are no issues of material fact); *cf. Russell v. Howe*, 293 Ill. App. 3d 293, 296 (1997) (trial court abused its discretion in denying a preliminary injunction based on extraneous evidence received at evidentiary hearing rather than limiting its consideration to the legal sufficiency of the complaint).

¶ 15    Brown argues that the trial court abused its discretion in granting the preliminary injunction, contending that the plaintiffs failed to establish any of the elements necessary for a preliminary injunction. Brown also argues that the preliminary injunction entered by the trial court amounted to an improper equitable attachment and was too vague to be enforced. The plaintiffs argue that the trial court did not abuse its discretion. The plaintiffs contend that they raised a fair question as to each element required for injunctive relief.

¶ 16    A preliminary injunction is an extreme remedy that should only be employed where serious harm would result if the injunction were not issued. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365 (2001). The party seeking a preliminary injunction must show a fair question as to each of the four required elements: "(1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case." *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). The only question before this court is whether there was a sufficient showing to sustain the order of the trial court, specifically, whether the party seeking the injunction demonstrated a *prima facie* case that there is a fair question as to the existence of the rights claimed. *Callis, Papa, Jackstadt & Halloran, P.C.*, 195 Ill. 2d at 366. We review a decision to grant or deny a preliminary injunction for an abuse of discretion. *Id.*

¶ 17    The trial court found that the plaintiffs established there was a fair question that they had a clearly ascertained right in need of protection, *i.e.*, that they were entitled to a referral fee under Illinois law. Illinois law allows the payment of a referral fee. Ill. R. Prof'l Conduct R. 1.5(e) (eff. Jan. 1, 2010); *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 32. The trial court considered Brown's motion to dismiss in making this finding, concluding that it did not seem likely that the claims would be dismissed with prejudice. See *Danville Polyclinic, Ltd. v. Dethmers*, 260 Ill. App. 3d 108, 115 (1994) (court could consider affirmative defenses at a hearing on a request for preliminary injunction). In this case, the trial court properly considered the sufficiency of the complaint in light of Brown's motion to dismiss because an

injunction is based on the pleadings as they exist at the time the injunction is entered. See *Miollis v. Schneider*, 77 Ill. App. 2d 420, 427 (1966); see also *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 10 (" 'The right to injunctive relief necessarily brings into question the sufficiency of the complaint ***.' " (quoting *Olympic Federal v. Witney Development Co.*, 113 Ill. App. 3d 981, 984 (1983))). A preliminary injunction is intended to preserve the status quo until the trial court "has an opportunity to consider the cause upon its merits or upon a motion to dismiss." *Bowman Shoe Co. v. Bowman*, 21 Ill. App. 2d 423, 440 (1959). The trial court concluded that it was possible that some of the claims would be dismissed under sections 2-613 or 2-615 of the Code (735 ILCS 5/2-613, 2-615 (West 2018)) but not with prejudice. If the motion to dismiss under section 2-619.1 of the Code was granted, the preliminary injunction would cease and Brown would be entitled to any damages.

¶ 18    The second and third elements, irreparable harm and adequate remedy at law, are closely related. *Happy R. Securities, LLC v. Agri-Sources, LLC*, 2013 IL App (3d) 120509, ¶ 36. The trial court found that the plaintiffs established a fair question with regard to an adequate remedy at law even though they were only seeking monetary damages. Typically, if plaintiffs are seeking only monetary damages, the remedy at law is adequate, and the plaintiffs cannot show irreparable harm. *Hensley Construction, LLC v. Pulte Home Corp.*, 399 Ill. App. 3d 184, 190 (2010). As the plaintiffs acknowledge in their brief, equitable attachments, whereby a creditor seeks to restrain a debtor's control over property in its possession and thereby enforce by attachment a purely equitable claim that is not reduced to judgment, are not allowed in Illinois. *American Re-Insurance Co. v. MGIC Investment Corp.*, 73 Ill. App. 3d 316, 325 (1979) (citing *Dunham v. Kauffman*, 385 Ill. 79 (1943)). Section 4-101 of the Code permits attachment in only 10 specific circumstances, and the plaintiffs did not plead any of these circumstances. See 735 ILCS 5/4-101 (West 2018); *Hensley Construction, LLC*, 399 Ill. App. 3d at 191. There is an exception, though, when the plaintiffs have an interest in a specific fund held by the defendant, which is known as the specific fund exception. *Hensley Construction, LLC*, 399 Ill. App. 3d at 191. "The exception contemplates specific funds such as insurance proceeds or inheritances." *Grower Service Corp. v. Brown*, 204 Ill. App. 3d 532, 535 (1990). The trial court applied the specific fund exception to equitable attachments because the money at issue was a specific fund and the trial court found that Brown's alleged behavior weighed in favor of the exception.

¶ 19    The existence of a remedy at law does not deprive a court of its equitable power to grant injunctive relief unless the remedy is adequate. *K.F.K. Corp. v. American Continental Homes, Inc.*, 31 Ill. App. 3d 1017, 1021 (1975). To be adequate, the remedy "must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy." *Id.* In this case, the fund at issue is clearly subject to the court's final order and specific to the underlying dispute, and the trial court was taking steps to ensure that the money was preserved until there could be a decision on the merits. See *American Re-Insurance*, 73 Ill. App. 3d at 325; see also *Brown*, 204 Ill. App. 3d at 535 (specific fund exception contemplates specific funds such as insurance proceeds).

¶ 20    The trial court also found that the plaintiffs established a fair question of likelihood of success on the merits, specifically, the application of Illinois law (which favors a referral fee) rather than Missouri law (which allegedly does not allow referral fees) and whether they were involved in a joint venture for purposes of administering this case.

¶ 21 After determining that the plaintiffs have shown the four necessary elements, before imposing a preliminary injunction, the trial court must balance the equities and conclude that the benefits to granting the injunction outweigh any possible injury that the injunction will cause. *Travelport, LP v. American Airlines, Inc.*, 2011 IL App (1st) 111761, ¶ 48. In this case, the trial court found that the balance of equities or hardships favored the plaintiffs due to Brown's actions, including his lack of transparency. Also, the trial court found that Brown did not argue that holding half of $6.9 million in trust while the matter was litigated would inhibit his ability to maintain his business. In addition, plaintiffs were required to post a bond. Public policy was not a factor. Our review is limited to whether the plaintiffs made a sufficient showing, *i.e.*, raised a fair question, as to each element to sustain the trial court's order. See *Smith v. Department of Natural Resources*, 2015 IL App (5th) 140583, ¶ 22. We find that the plaintiffs did so and the trial court did not abuse its discretion in granting the preliminary injunction.

¶ 22 III. CONCLUSION

¶ 23 The judgment of the circuit court of Peoria County is affirmed.

¶ 24 Affirmed.